Ball, etc., v. Maysville & B. S. R. R. Co., etc.

CASE 79—PETITION EQUITY—December 16.

# Ball, Etc., v. Maysville & B. S. R. R. Co., Etc.

APPEAL FROM MASON CIRCUIT COURT.

1. RAILROAD COMPANIES—EMINENT DOMAIN—LIEN OF JUDGMENT CREDITORS FOR DAMAGES.—A judgment creditor against a railroad company for damages to abutting property resulting from the construction of the road in a street so as to obstruct ingress and egress, and to cause necessarily smoke, soot and cinders to be thrown upon the property, his private property having been taken for public use, has a lien upon the entire road in the nature of a vendor's lien to secure the payment thereof; and since a railroad, if sold under judicial process, must be sold as an entirety, such a lien exists upon the entire road, and not merely upon such sections thereof as are in front of the property injured

2. PRIORITY OF LIENS.—The lien of such a judgment creditor is prior and superior to any rights of a lessee of the road.

3. OPERATION OF RAILROAD—INJUNCTION AGAINST LESSEE.—In an action by a judgment creditor of a railroad under the provisions of sec. 1814 of the Ky. Statutes for the appointment of a receiver, the lessee of the road whose rights are subordinate to those of a judgment creditor may be enjoined from using the road.

4. WAIVER OF RIGHTS TO ENFORCE JUDGMENT.—Because the plaintiffs did not obtain personal judgments against the lessee, as they might have done at the same time they obtained judgment against the lessor, they did not lose their right to proceed in an equitable action to enforce their judgments against the lessor, or waive their liens.

5. APPOINTMENT OF RECEIVER FOR RAILROAD—INSUFFICIENT EQUIPMENT.—Because the railroad company did not have sufficient equipment to enable a receiver to properly operate it, is no reason why a judgment creditor should be deprived of his right to have a receiver appointed.

E. L. WORTHINGTON, GARRETT S. WALL AND L. W. ROBERTSON, FOR APPELLANTS.

WADSWORTH & COCHRAN, FOR APPELLEES. (Record and briefs not in the office.)

Ball, etc. v. Maysville & B. S. R. R. Co., etc.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

As judgment creditors of the Maysville & Big Sandy R. R. Co., on returns of no property found, the appellants instituted this, an equitable action against the Maysville & Big Sandy R. R. Co., by which it is sought to have the road placed in the hands of a receiver, and also relief by injunction. The judgments were rendered for damages resulting respectively to the abutting properties—real estate of the appellants situated in the cities of Maysville and Dover, Mason county, Ky.—by the construction and prudent operation of the railroad on the streets upon which the property abuts.

The manner in which the railroad was constructed unreasonably obstructed ingress and egress to and from the street, and the prudent operation of it caused smoke, soot and cinders to be thrown in and upon their property. It is hardly necessary to add that the Constitution of the State only allows private property to be taken when for public use, and then only when just compensation is previously made. It is no longer an open question in this State that the damages resulting to property in the manner indicated is a taking of private property for a public use, and for which compensation must be made.

In Stickley v. Chesapeake & Ohio R. R. Co., 93 Ky., 327, the court said: "When the proximity of the road to the dwelling is such as to prevent the reasonable ingress and egress to and from the premises, to cause necessarily soot and cinders to enter the dwelling, then it becomes a taking of private property for public use, and for which compensation must be made.

If thus damaging the property is a taking in the meaning

of the Constitution, then there should be a remedy commensurate with the injury resulting from the invasion of private rights. If the person so injured simply has a legal claim for such injury the railroad company may be wholly insolvent, and a recovery of a personal judgment will not in any degree enable the party to be compensated for the property taken. The taking implies that there has been an appropriation or deprivation of something. Should the owner be compelled to surrender such property right without retaining a claim upon it for compensation, it can be taken against his will, when done by constructing the road along the street on which his property abuts, without any security that he will ever be compensated for it. As he can not tell until the road is constructed the extend of his damages, he can not by an injunction prevent its construction. (Fulton, &c., v. Short Route R. R. Transfer Co., 85 Ky., 640.)

Will it do to hold that he can not prevent the invasion of his rights before the road is constructed along the street, then when it is done say that he has no right greater than that afforded him by a personal judgment, may be against an insolvent corporation?

It seems that a court of chancery, when the taking of the property is accomplished as was done in this and similar cases, will not protect the owner by restraining the appropriation of the property because the extent of the injury can not be ascertained until the railroad is constructed. Now, when the injury has been ascertained, can a court of chancery afford to say that, notwithstanding it was not proper to prevent the invasion of private rights, still there is no equitable right which will enable the owner to pursue that

which was taken from him, and claim a lien upon it to the extent of the injury. It would seem that courts of equity would be established for little purpose if they are powerless, in the first instance, to prevent the invasion of private rights, and, in the second, to give an adequate remedy for the injury it could not prevent.

We are of the opinion that the appellants have a lien in the nature of a vendor's lien on the Maysville & Big Sandy railroad for their judgments. From the character of the property, the lien must necessarily exist on the entire line of railroad, as there can not be a sale of only that part of the railroad which fronts on the property without serious injury to the owners of the road and the rights of the public for whose use the private right must, for just compensation, yield. If there could be a sale of such sections of the road as are in front of the properties injured, then it would necessarily follow that there could be a severance, and possession taken of such parts thus sold by the purchaser.

It appears that the Chesapeake & Ohio R. R. Co. is in possession of the Maysville & Big Sandy road under some sort of arrangement, the nature of which is unknown to the appellants. Whatever may be the nature of the contract between the companies the Chesapeake & Ohio R. R. Co. can not acquire any rights which will interfere with the rights of the appellants to enforce the collection of their judgments. The liens of the appellants are superior to the claims of all others except they be of a similar nature. If it were otherwise, then the Maysville & Big Sandy R. R. Co. could lease or sell its line of road and defeat the collection of the claims of those whose property had been taken in the construction

and maintenance of the road. The purchaser or lessee takes the road with the burdens on it.

It was said in Stickley v. Chesapeake & Ohio R. R. Co. "that a railroad company which enters upon and appropriates the land of another to its own use, without right, can not transfer its corporate privileges to another so as to justify a continuance of the wrong in its vendee, as if the latter were an innocent purchaser."

In Penn Mutual Life Ins. Co. v. Heiss, 141 Ill., 35, the court said: "It is not in the power of the railroad, by alienation or otherwise, to defeat this constitutional guaranty, and the alienee, purchaser or successor will be required to take notice of the provisions restricting the power to take or damage private property for public use, and be held to take subject to the burden cast upon the railroad by, through or under which the interest is acquired. It by no means follows, as seems to have been supposed in some of the cases, that a right of action would exist against the new company, who might, as successor to the original railroad company, become possessed of the franchise and property; but when a mortgagee or successor company insists upon a continuation of the use, or where there is an appropriation of that part of the railroad whereby the damage has been occasioned, the right of the lot owner to compensation out of the rest is absolute."

Lewis on Eminent Domain, section 621, says: "The owner's claim for just compensation is paramount to any right which can be derived by or through the party making or seeking the condemnation. Different courts work out this result in different ways, but we believe all concur in reaching it in

Ball, etc., v. Maysville & B. S. R. R. Co., etc.

one way or another. Some courts hold that the claim for compensation is in the nature of a vendor's lien, and as such is prior to any right which the party condemning can acquire or transfer. Others hold that no title passes until payment, and consequently that a mortgage or conveyance by the party condemning conveys nothing to the grantee except such possessory rights as the former may have."

Section 814, Kentucky Statutes (Act 1890), provides that

"after an execution on a judgment against any company owning or operating any railroad in this State shall be returned by the proper officer no property found, in whole or in part, the plaintiff therein may institute an equitable action against said company in the circuit court of the county in which said judgment was rendered, to place its road and property in the hands of a receiver; and the court, upon a petition showing said return and the failure to pay said judgment upon the service of summons upon said company, shall appoint some suitable person as receiver of said company, and, as such, take possession and control of all the road and property belonging to and operated by said company, including all rolling stock thereof."

It does not require argument to show that the appellants are entitled to have a receiver appointed of the property of the Maysville & Big Sandy R. R. Co. under the statutes quoted. Owing to the character of the claims which have been put in judgments the rights of the Chesapeake & Ohio R. R. Co. are subordinate to them, and must yield to their superiority. If the appellants fail to realize these judgments by having the railroad placed in the hands of a receiver, then, if they do not desire to enforce their lien upon the railroad,

the question may arise as to the right of the court by injunction to prevent the use of the railroad in front of their respective lands until the judgments are paid, but we do not now decide that question.

Upon the facts alleged in the petition, which on demurrer are assumed to be true, the Chesapeake & Ohio R. R. Co. may be enjoined from the use of the Maysville & Big Sandy railroad because its rights are subordinate to those of the appellants, as we have said. If the court is without authority to restrain the Chesapeake & Ohio R. R. Co. from using the line of railway, then the receiver would be powerless to take possession and control of the road, and the attempt to collect the judgments through the medium of a receiver would be abortive.

It is contended that appellants might have obtained personal judgments against the Chesapeake & Ohio R. R. Co. at the same time the judgments were obtained against the Maysville & Big Sandy R. R. Co. for the damages sustained, and as they failed to do so they have lost their right to proceed in equity to enforce their judgments.

The statute we have quoted answers that contention. Besides, independent of the statute, the fact that appellants may have been entitled to maintain such action against the Chesapeake & Ohio R. R. Co. did not destroy their liens, hence not their right to enforce them in such manner as the law or equitable principles authorize.

It does not appear in the petition what equipment the Maysville & Big Sandy R. R. Co. owns that may be used in its operation. Counsel for appellants suggest the difficulties the receiver would have in operating the road in case

Ball, etc., v. Maysville & B. S. R. R. Co., etc.

the equipment was insufficient. If such be the case that would indicate that appellants might have trouble to collect their judgments through a receiver, but it does not prevent them from making the effort to so collect their judgments. It is also suggested that the interests of the public are in certain contingencies to be considered.

The right of the citizen to own, possess and enjoy his property must yield to the superior right of eminent domain which is an essential attribute of sovereignty. To exercise it is an inherent power of the government. In the exercise of the right the citizen must be justly compensated for his property. If the public interests are to stand between the rights of the citizen and an effective equitable remedy to enforce that right, then it is possible to take private property for public use without compensation, it would be disregarding the organic law of the State and destroying the property rights of the citizen.

The legislative branch of the government does not seem to think the public would suffer by placing the property of a company, owning or operating a railroad, in the hands of a receiver when it permits executions on judgments to be returned no property found. The taking of the property occurred under the Constitution of 1850.

The judgment is reversed, with directions that the order sustaining the demurrer to the petition be set aside and the demurrer overruled. and for further proceedings consistent with this opinion.