Maysville & B. S. R. R. Co. v. Ball, et als.

CASE 35—ACTION TO ENFORCE JUDGMENTS—MARCH 29.

# Maysville & B. S. R. R. Co. v. Ball & Others.

### APPEAL FROM MASON CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANTS APPEALED. AFFIRMED.

ENFORCEMENT OF JUDGMENTS—COLLATERAL ATTACK ON JUDGMENT—IN-
JURY TO ABUTTING PROPERTY—GRANT OF RIGHT OF WAY—SERVICE
OF PROCESS—ENTRY OF APPEARANCE.

| 108 | 241 |
| 116 | 588 |
| 108 | 241 |
| 116 | 588 |

| 108 | 241 |
| f128 | 128 |

| 108 | 241 |
| 132 | 351 |

Former opinion in this case is found in 43 S. W., 731.

Held: 1. Ball and others entered into a contract with the defendant
company to furnish, provide and cause to be conveyed to it, suit-
able rights of way for its line of railroad from Ashland to the
eastern boundary line of Campbell county of the width already
located by its engineer. This agreement constitutes no defence
to the enforcement of a judgment for damages in favor of one
of the obligors for interference with the access to his property
and the throwing of soot and cinders thereon in the construction
and operation of the railroad through his land. The defense,
if available at all, should have been pleaded in the action in
which the judgment was rendered.

2. Such contract does not relieve the railroad company from its
liability to pay the obligor for his property outside the "right
of way," which has been taken by so constructing and operat-
ing its road on the right of way as to interfere with his ease-
ment of access, and to the injury of his buildings.

3. The amendment to Civil Code, sec. 51, providing that service of
summons on the person or corporation controlling or operating
a railroad shall be treated as service on the defendant corpora-
tion owning or constructing the railroad, where summons can
not be served on such defendant, and the appearance of the de-
fendant for the purpose of moving the quashal of the service
of summons shall operate as an appearance for all purposes, is
not unconstitutional.

4. The entry of the appearance of the defendant for the purpose of
objecting to the jurisdiction of the court should be treated as
a motion to quash the service of the summons, and under said
amendment to the Code, it had the effect to enter defendant's
appearance for all purposes.

Maysville & B. S. R. R. Co. v. Ball, et als.

5. The defendant can not avail itself of any defense to the enforcement of a domestic judgment, by reason of non-service of process, unless such fact appears in the record, and such fact must be pleaded.

WADSWORTH & COCHRAN, ATTORNEYS FOR APPELLANT.

### CLASSIFICATION OF QUESTIONS DISCUSSED.

#### I.—APPEAL.

1.—As to appellees, Boyd and husband and Nelson et al.

(1.)—The personal judgments in their favor against the M. & B. S. R. R. Co. are void because summons served on agent of the C. & O. Ry. Co., and it did not appear by the return of the officer on the summons or by affidavit that it could not have been served on M. & B. S. R. R. Co. under existing laws. Act of May 10th, 1890, Sess. Acts 1889-90, vol. 1, 135; 22 Am. & Eng. Enc. of Law, 182-148; Colton v. Ruper, 60 Mich., 328; 2 Enc. Pl. and Prac., 226; Fisk v. Hunt, 54 Prac., 660; Brownfield v. Dyer, 7 Bush, 505.

(2.)—Determination by court that it has jurisdiction to render a judgment by default is not res adjudicata in another action if as a matter of law it did not have jurisdiction.

a.—The following authorities are not contrary to this proposition: 1 Freeman on Judgments sec. 130; Williams v. Haynes, 19 Am. St. Rep., 752; Cullen v. Ellison, 82 Am. Dec., 448; 1 Smith's Leading Cases, 1128; Borden v. State, 54 Am. Dec., 235.

b.—The following authorities and others cited subsequently support this proposition: 1 Black on Judgments, sec. 274; 1 Freeman on Judgments, sec. 130.

(3.) a.—Domestic judgment rendered by a court of general jurisdiction can not be collaterally attacked. It will be presumed that all steps necessary to confer jurisdiction were taken unless the contrary appears of record. Newcomb v. Newcomb, 13 Bush, 562.

b.—This is not the law everywhere. 1 Black on Judgments, sec. 275.

c.—Not correct as matter of principle and logic. 1 Black on Judgments, sec. 276; Bigelow on Estoppel, (5th edit.), 203 note; Brownfield v. Dyer, 7 Bush, 505, 95 Ky., 173.

d.—This doctrine also applies in this State where proceedings are not conducted according to the course of common law. Newcomb v. Newcomb, 13 Bush, 562.

e.—But this is not in accordance with the weight of authority elsewhere. 1 Black on Judgments, 281; Bigelow on Estoppel (5th edit.), 204, 205.

Maysville & B. S. R. R. Co. v. Ball, et als.

*f.*—If, however, want of jurisdiction appears of record no such presumption will be made. 1 Black on Judgments, secs. 270, 277.

*g.*—Want of jurisdiction appears of record when record shows that certain steps were taken to confer jurisdiction and those steps do not confer it. Hahn v. Kelly, 34 Cal., 391; 94 Am. Dec., 742; 1 Freeman on Judgments, secs. 125, 130; Herring v. Chambers, 103 Pa. St., 175; Barber v. Morris, 37 Minn., 194; Godfrey v. Valentine, 37 Minn., 336; Green's Heirs v. Breckinridge's Heirs, 4 Mon.,541; Blight's Heirs v. Bank, 6 Mon., 192; Long v. Montgomery, 6 Bush, 394; Brownfield v. Dyer, 7 Bush, 505; Hart v. Grisby, 14 Bush, 542.

*h.*—The following cases, analyzed and distinguished: Hynes v. Oldham, 3 Mon., 266; Benningfield v. Reed, 8 B. M., 102; Newcomb v. Newcomb, 13 Bush, 544; Carr's Adm'r. v. Carr, 92 Ky., 552; Wilson v. Teague, 95 Ky., 47; Sear's Heirs v. Sear's Heirs, 95 Ky., 173.

*i.*—Public policy has led to adoption of rule as to presumption and this case not within the policy. 1 Black on Judgment, sec. 276.

*j.*—To apply the presumption in this case would be in violation of the 14th amendment to U. S. Constitution. York v. Texas, 137 U. S., 15.

(4.)—Return on summons did not show all required to be shown according to act of May 10th, 1890.

(5.) *a.*—The fact that determination of the court in case of Boyd and husband that it had jurisdiction was had upon entry of special appearance by appellant, M. & B. S. R. R. Co., and objection to jurisdiction did not make that determination *res adjudicata* unless court has jurisdiction. 2 Enc. of Pl. and Pr., 620, 621; Wright v. Boynton, 72 Am. Dec., 319;

*b.*—The following authorities are not *contra*: 1 Black on Judgments, sec. 274; Bigelow on Estoppel, 289; Moch v. Virginia F. & M. Co., 10 Fed., 696.

*c.*—Special entry of appearance did not constitute general appearance, because no motion to quash summons. York v. Texas, 137 U. S., 15.

*d.*—Even if it did, it was withdrawn by permission of the court, and this made it as if appearance had never been entered. 2 Enc. Pl. and Pr., 695, 696; Graham v. Spencer, 14 Fed., 603.

2.—As to appellee, W. W. Ball's personal judgment, appellant's answer and counterclaim presented a good defense. He, with others, had contracted to procure rights of way for the appellant, M. & B. S. R. R. Co., between certain points and that judgment was for a right of way between those points. Lewis on Eminent Domain, sec. 114; Stickley v. R. R. Co., 93 Ky., 327; Ball v.

R. R. Co., 43 S. W., 731; Fulton v. Transfer Co., 85 Ky., 640;
Keener v. U. P. R. R. Co., Fed., 128; Jay v. St. Louis, 138 U.
S., 44.

E. L. WORTHINGTON FOR APPELLEE.

One of the requisites of a valid counterclaim is a demand of the
relief to which the defendant considers himself entitled. Hutch-
ings v. Moore, 4 Met., 113.

No matter of defense can be pleaded to an action on a judgment
which existed prior to the judgment. 1 Chitty on Pleadings,
486; 2 Black on Judgments, secs. 754 and 758; Hill v. Lancaster,
88 Ky., 338; 1 Freeman on Judgments, sec. 285; Walker v.
Thomas, 88 Ky., 486.

Any injury to property which deprives the owner of the ordinary
use of it is a taking of property within the meaning of the
Constitution. Cooley's Constitutional Limitations, 675; Lewis
on Eminent Domain, sec. 56; Wood on Nuisances, sec. 762;
Kemper v. Louisville, 14 Bush, 91.

The term "right of way," when the context refers to it as having
width, means "the strip of land which a company takes to con-
struct its road bed on." Joy v. St. Louis, 138 U. S., 44; New
Mexico v. U. S. Trust Co., 172 U. S., 186.

A railroad company may own its right of way and still be liable
for a "taking" of property outside its right of way. Lewis on
Eminent Domain, secs. 58, 566 and 584.

A suit to enforce satisfaction of a judgment is collateral to the suit
in which the judgment was rendered. 1 Black on Judgments,
sec. 252.

When a defendant appears specially and objects to the court's juris-
diction on account of the insufficiency of the process, the court
has jurisdiction to decide the issue raised by the objection;
and its decision that the objection is not well taken, however er-
roneous, is not void, and therefore shields the judgment in the
suit from collateral attack. 1 Black on Judgments, sec. 274;
Bigelow on Estoppel, 289; Van Fleet on Collateral Attack, sec.
329; 1 Herman on Estoppel, sec. 552; Moch v. Virginia Fire and
Marine Co., 10 Fed., R. 696; Ferguson v. Millender, 32 W. Va.,
30; Weber v. Tschetter, 46 N. W. Rep., 201.

The act of May 10th, 1890, amending section 51 of the Civil Code,
is constitutional. Maysville, &c., R. Co. v. Shofstall, 15 Ky.
Law Rep., 632; York v. Texas, 137 U. S., 15; Kauffman v.
Wooters, 138 U. S. 285.

An appearance by defendant to object to the jurisdiction of the court over the subject matter of the action, waives any defect in the service of process. 6 Thompson on Corporations, sec. 7558; 2 Ency. of Pl.. and Pr., 621 and 625.

Under the act of 1890, an appearance by defendant to object to the jurisdiction of the court over its person because of the insufficiency of the process, is an appearance for all the purposes of the action, although it made no motion to quash the process. Kauffman v. Wooters, 138 U. S., 285; York v. Texas, 137 U. S., 15; York v. State, 73 Tex., 651.

The effect of defendant entering a special appearance is not done away with by withdrawing its appearance after the court has overruled its objection to the jurisdiction. Creighton v. Kerr, 20 Wallace, 8; Eldred v. Bank, 17 Wallace, 551; Evans v. Iles, 7 Ohio St., 233; Chesapeake, &c., Ry. Co. v. Heath, 87 Ky., 651.

In a suit to enforce satisfaction of a judgment, a plea that the judgment is void is a collateral and not a direct attack thereon. Van Fleet on Collateral Attack, secs. 2 and 3. 1 Black on Judgments, sec. 252.

There is a conflict in the authorities as to whether the same presumptions of jurisdiction, which apply to judgments against residents, apply also to judgments against non-residents. 1 Jones on Evidence, sec. 28; 1 Freeman on Judgments, sec. 127; 1 Black on Judgments, secs. 281, 227 and 228.

The main ground upon which it is sometimes held that the same presumptions do not apply, is not that the *mode of service* is different, but that a non-resident is beyond the reach of the court's process, and owes no allegiance to the sovereignty which the court represents. Galpin v. Page, 18 Wallace, 350.

The Kentucky doctrine is that the same presumptions apply to constructive as actual service of process. Newcomb v. Newcomb, 13 Bush, 544.

There are some earlier cases in Kentucky which adopt the opposite view. Brownfield v. Dyer, 7 Bush, 505; 1 Jones on Evidence, sec. 28; 1 Black on Judgments, sec. 281.

*Galpin v. Page*, 18 *Wallace*, 350, is irreconcilable with the latter case of *Applegate v. Lexington & Carter Mining Co.*, 117 *U. S.*, 255; 1 Freeman on Judgments, sec. 127 note.

Authorities discussing the validity of judgments often use the word "void" in the sense of "voidable." 1 Black on Judgments, sec. 170.

The preponderance of authority supports the doctrine that a judgment of a domestic court of general jurisdiction can not be collaterally attacked unless the record of the action in which it was rendered shows affirmatively on its face, that the court had

no jurisdiction to render it. 1 Freeman on Judgments, secs. 131, 132, 133 and 134; 1 Black on Judgments, secs. 270, 271, 275 and 276.

This majority doctrine is the well settled doctrine of Kentucky. Newcomb v. Newcomb, 13 Bush, 544; Stevenson v. Flournoy, 89 Ky., 568; Sears v. Sears, 95 Ky., 173.

And of the Supreme Court of the United States. Martin v. Gray, 142 U. S., 236.

The doctrine is not wrong "in principle." Newcomb v. Newcomb, 13 Bush, 563; 1 Freeman on Judgments, sec. 134.

The necessity of protecting "innocent third persons" is not the only or chief consideration of public policy on which it rests. The still more important consideration is that confidence should be reposed in judicial tribunals, and in the absolute verity of their records. Newcomb v. Newcomb, 13 Bush, 563; Smith's Leading Cases, vol. 1, part 2, page 1138; 1 Freeman on Judgments, sec. 134.

An answer to an action on a domestic judgment must not only deny service and appearance, but must allege what, if anything, *the record* shows, or fails to show, on those points. If the judgment is of a domestic court of general jurisdiction, the answer must allege that the record shows affirmatively on its face that there was no process served. Van Fleet on Collateral Attack, sec. 855; 1 Black on Judgments, sec. 271; 2 Freeman on Judgments, sec. 459; Martin v. Gray, 142 U. S., 236.

In determining whether a record does show affirmatively that the court rendering a judgment did not have jurisdiction of the defendant, *three* different conditions of the record may be presented:

(1) Where the record is entirely *silent* on the subject; no sheriff's return on the summons and no recital in the judgment that defendant appeared or was duly summoned.

(2) Where the sheriff's return shows an *insufficient* service, and the balance of the record is *silent* on the subject.

(3) Where the sheriff's return shows an *insufficient* service, and the judgment recites that defendant was *duly summoned.*

In class 1, the presumption of jurisdiction obtains and the judgment is valid. 1 Freeman on Judgments, sec. 124; 1 Black on Judgments, sec. 271.

In class 2 the authorities generally hold that there is no *presumption* of any other service than that shown by the record, and therefore a case is presented where the record shows affirmatively a want of jurisdiction, and hence the judgment is void. 1 Freeman on Judgments, sec. 125; 1 Black on Judgments, secs. 270 and 277.

To this class belong the cases of *Hart v. Grigsby*, 14 *Bush*, 542, and *Brownfield v. Dyer*, 7 *Bush*, 505.

In class 3 the judgment is valid, except in those cases where the record indicates that the recital is merely formal and that the attention of the court was not called to the manner of service, and it did not therefore mean to *adjudge* that the defendant had been duly served, but only meant to formally refer to a fact shown by another part of the record. 1 Freeman on Judgments, sec. 130.

Where there has been an attempted service of process and the judgment recites that the defendant had been "duly summoned," the *presumption* is that the court considered and determined that fact; and whether that determination hinged on a question of law or one of fact, the recital that defendant *had* been duly summoned imports absolute verity, and the judgment is not void, and can not be attacked collaterally. 1 Freeman on Judgments, secs. 126 and 130; Works on Courts, 164; Elliott's, Appellate Procedure, sec. 332; Treadway v. Eastburn, 57 Tex., 209; Williams v. Haynes, 19 Am. St. Rep., 752; Tarbox v. Hays, 31 Am. Dec., 478; Schneitman v. Noble, 75 Iowa, 120; 1 Black on Judgments, sec. 277; Hahn v. Kelly, 34 Cal., 391; 94 Am. Dec., 742; Callen v. Ellison, 13 Ohio St., 446; 12 Am. & Eng. Ency., of Law, page 147 z; Bannon v. People, 1 Bradwell, 496: Van Fleet on Collateral Attack, sec. 66; Borden v. State, 54 Am. Dec., 235; Hech v. Martin, 16 Am. St., Rep., 915; Harrison v. Hargrove, 58 Am. St. Rep., 781; Colt v. Haven, 79 Am. Dec., 244; Dunham v. Wilfong, 69 Mo., 355; Richards v. Skiff, 8 Ohio St., 586; McCauley v. Fulton, 44 Cal., 361; Newcomb v. Newcomb, 13 Bush, 544.

The doctrine that such a recital in a judgment is conclusive in all collateral proceedings, is based, not upon the doctrine of *res judicata*, but upon the doctrine of the absolute verity of the records of a court of record. Van Fleet on Collateral Attack, sec. 17.

The case of Green v. Breckinridge, 4 Mon., 541, is based on a supposed distinction between recitals in a decree in chancery, and those contained in a common law judgment, discussed *in Peers v. Carter*, 4 *Littel*, 268, to which it refers; also upon the idea, repudiated in *Newcomb v. Newcomb*, 13 *Bush*, 544, that in case of constructive service on non-residents, the record must affirmatively show that all the requirements of the statute have been complied with.

The case of *Barber v. Morris*, 37 *Minn.*, 194, is in square conflict with the *Newcomb case*, 13 *Bush*, 544.

The case of *Long v. Montgomery*, 6 *Bush*, 394, was an *appeal* from a void judgment. It presented therefore a case of *direct* and not collateral attack on the judgment, and the principles applicable are entirely different. 1 Black on Judgments, sec. 288.

The service of the process in this case was not, as of course, insufficient, even conceding the correctness of the construction of the act of 1890, contended for by appellants. The sheriff's return showed a valid service, provided an affidavit was thereafter filed, showing that the M. & B. S. R. Co. had no agent in the State upon whom process could be served. In support of the judgment, which recited that defendant had been duly summoned, it must be *presumed* in this collateral action, that such affidavit *was* filed. Sears v. Sears, 95 Ky., 173; Newcomb v. Newcomb, 13 Bush, 544.

The sheriff's return alone showed a valid service of process on a proper construction of the act of 1890.

OPINION OF THE COURT BY JUDGE PAYNTER—AFFIRMING.

This case was before this court on a former appeal, and the opinion delivered is found in 43 S. W. 731. The purpose of this action is to enforce a judgment which W. W. Ball recovered against the Maysville & Big Sandy Railroad Company, and one recovered by Boyd and wife and one by Nelson and wife against the same. The defense to the enforcement of each judgment differs somewhat,— especially as to the defense of the Ball judgment. We will consider the questions raised by the defenses interposed on the several judgments.

## Ball Judgment.

The appellant constructed its line of railway along a street in the city of Maysville, by the property of Ball; and he claims that his property was damaged by reason of the interference with his easement of access, and by injuring his property by throwing soot and cinders on it, etc. For the damages thus resulting, he recovered judgment. By the previous opinion of the court, we adjudged that it was a taking of his property. The appellant filed

an answer, which is designated as a "counter-claim;" and, so far as it is necessary to give them, the facts averred are as follows: That before the doing of the acts of which Ball complained in his suit to recover the judgment which he now seeks to enforce, to wit, on the 29th of April, 1886, he, together with a number of gentlemen, entered into a contract with the Maysville & Big Sandy Railroad Company to furnish and provide, and cause to be conveyed to it, suitable rights of way for its line of railroad from its present track at Ashland, in the State of Kentucky, to the eastern boundary line of Campbell county, in this State,—such right of way to be on the line designated by its engineer therefor, except so far as the right of way had been secured and paid for,—and that the right of way which they agreed to furnish was to be of the width already located and designated by its engineer. Ball's property which was taken was situated on that part of the proposed line of railway, the right of way for which he and his co-obligors agreed to furnish, provide, and have conveyed to the railroad company. It is contended for appellant that, under the contract which Ball entered into, he was bound to furnish the property for the taking of which he recovered judgment; and it resists the enforcement of the judgment on the grounds of this contract, claiming that it is now available to prevent the enforcement of the judgment. For Ball it is insisted that if the contract imposed the obligation to furnish the property which was taken from him, or to pay the damage which resulted to him by reason of the construction and prudent operation of the road, it was available as a defense to his action, and, not having pleaded it as a defense, it can not now be done. For the purpose of considering this question, we will assume that the contract which Ball and his

associates entered into released the railroad company from the payment of the damages which he recovered.     Of course, it is upon this theory that the appellant seeks to plead that contract as a defense to Ball's right to enforce the judgment.

It is insisted by counsel for appellant that the con-tract which Ball and others entered into was not an ex-ecuted conveyance of the right of way over any property, corporeal or incorporeal, that they or either of them own-ed, upon which the line of railway was or might be located, and also that it was not an executory agreement upon their part to convey such right of way to the appellant. It is argued that if it was an executed conveyance, or an executory agreement to convey, it was either a gift or a sale, and, if a sale, there was a certain purchase price for it, and that there was nothing in the contract which indicates that it was either a sale or a gift.   It is said that, if the contract was a conveyance of the right of way over Ball's incorporeal property, such conveyance might have been pleaded as a defense to Ball's common-law action for dam-ages, and it would be too late now to set it up.   It is likewise admitted that the same result would follow if it was an executed agreement to part with the right of way over the property of the guarantors.   The contract relied upon, executed by Ball and others, shows that the right of way was not to be a gift by them to the railroad com-pany.   On the contrary, the consideration for securing the right of way was that the company obligated itself to con-struct a line of railway between the points designated in the contract; and the further consideration was that the company was to issue to them stock to the amount which the various counties, cities, and towns along the line of railway expended in aid of furnishing the right of way,

which they obligated themselves to do. For the undertaking of the guarantors to furnish and provide, and cause to be conveyed to the railroad company, there was assumed by the parties to the contract to be a full consideration. The contract of Ball and others did not in terms say that those of the guarantors who owned property along the line of the road, which would be necessary to be taken for a right of way, should convey it. Still, they obligated themselves to provide, furnish, and have conveyed the right of way, which necessarily included that which was necessary to be taken through their own lands. If the railroad company compelled them to acquire it from some one else, and have it conveyed to it, why could not the railroad compel one of the guarantors to convey to it a right of way over his own land? Their obligation, as expressed in the contract, is joint and several,— to furnish the right of way wherever the engineer designated it. The right of eminent domain compels every citizen, for proper compensation, to give up his property to public use. The right of the railroad company existed to take the property of Ball, if it was necessary in the construction of the road. In the absence of a contract, the law gave the railroad company the right to take it, by making proper compensation; but, instead of the railroad company relying upon the right of eminent domain to secure this right of way when it reached the property of Ball, it had in its possession a contract of Ball, by which he agreed to provide, furnish, and have conveyed to the company, a right of way which included his own property. If the contract was enforceable against the guarantors, as it is claimed to be by counsel for appellant, there was an obligation upon Ball to see that the identical property in controversy was to be conveyed to the railroad

company. This position is assailed by the appellant, and, to do so, the mutual interest of the guarantors is urged as a reason why it is not a proper conclusion. The appel- lant had no concern in the settlement of the rights be- tween the guarantors. It was careful to have stated in the contract that they were bound jointly and severally on the undertaking. It is suggested that, in order to en- able the guarantors to comply with the contract on their part, it was necessary for them to agree with each owner of property, corporeal or incorporeal, over which the right of way was located, for the conveyance thereof, and to comply with the terms of the agreement, and secure exe- cution and delivery of the conveyance; and this construc- tion of the contract and its effect is necessary in order to preserve absolute equality among all the guarantors, and to place them all upon an equal footing. The mutual ob- ligations of the guarantors to each other, whether by the terms of the writing, or such as are implied by law, can not be considered in this controversy between one of the guarantors and the railroad company. Regardless of any obligation that was upon the part of the co-guarantors, the officers of the railroad company could have said to him when they reached his property in the construction of the road, "If you have not been paid for your property by your co-guarantors, we are not concerned about that, be- cause you obligated yourself individually that you would provide, furnish, and have conveyed to our company, this right of way;" and, in our opinion, a court of equity would have enforced the contract. However, it is not necessary to take this view of the case in order to reject the claim of the defendant to the right to prevent the collection of this judgment by reason of the contract. This right of way was secured over the streets of the city of Maysville

by the action of the proper authorities of that city.   Un-
der the adjudications of this court, and as cited in the
previous opinion delivered in this case, and the reaffirma-
tion of that principle, Ball could not have maintained an
action for damages to his property until the road was com-
pleted.   Neither could he have enjoined the railroad com-
pany from constructing its road along that street.    So
under the law the company was entitled to take exactly
what it did, and Ball was compelled to await its action in
the completion and the putting in operation the road, be-
fore he could tell the extent of his damages.   He then
brought suit to recover the damages which resulted from
the taking of his property.   If Ball's contract obligated
him to furnish that which was taken by the railroad com-
pany, then, when he sued for the alleged damages result-
ing therefrom, the railroad company could have interposed
the plea that he had not been injured, and had no right to
recover, because he had agreed to furnish to the railroad
company the very thing which he claimed produced his
damage when it was taken.   If Ball's contract to the com-
pany makes him liable to the defendant for the amount of
the judgment which he recovered against it, it is because
his contract obligated him to furnish the very thing for
the taking of which he recovered damages.   The amount
of the damages has been ascertained by the judgment, and
it is now claimed that, by reason of that contract to furn-
ish the property taken, it is available as a defense to the
judgment.   The defense here presented existed when the
judgment was recovered, as the contract had been exec-
uted previous thereto.   It is against reason to say that the
judgment should not be enforced because of this contract,
as by its terms Ball was bound to furnish the thing for
the taking of which he recovered damages, and at the same

time to say that that contract would not have been available as a defense to the action in which he sought to recover the damages for taking it.

It has been suggested that the contract which Ball had with the company was not enforceable until the amount of his claim was ascertained by a suit for damages. If its terms deprive Ball of the right to collect anything from the railroad company for the injury he received, it is folly to say that the amount of his injury should be ascertained. If he is not entitled to collect the judgment, by reason of his contract with the company, he never had any enforceable claim against it, and was not entitled to have any amount fixed. It is wholly immaterial to the appellant whether Ball could compel his co-obligors to contribute to his loss. Its claim of right to plead this contract as a defense to the judgment, thus making Ball pay the entire amount, shows that it has no consideration for or interest in Ball's claim against his co-obligors. Therefore an argument which is made based upon a desire to regard Ball's rights in a settlement of matters between him and his co-obligors comes without any force, nor is it applicable to the issue between him and appellant. Whenever there is a breach of the covenants of a contract, a cause of action arises. When the railroad company constructed its tracks along the street in close proximity to Ball's property (if the guarantors were by their contract to furnish the property, for the taking of which Ball received judgment), then there was a breach of the contract upon the part of the guarantors for their failure to furnish the property taken from Ball, and therefore a cause of action had accrued to the railroad company against them jointly and severally. So when Ball instituted his action to recover damages the railroad company's alleged cause of

action existed against him then as now.  The judgment
did not add to its cause of action, because it has not been
paid.  If by reason of such contract he is not entitled to
collect his judgment, then for the same reason he was not
entitled to recover it.  Therefore the contract was a de-
fense to the action for damages.  In treating of defenses
to actions on judgments, Chitty on Pleading (volume 1,
p. 486) says.  "No matter of defense can be pleaded which
existed anterior to the recovery of the judgment."  The
same rule is recognized in 2 Black, Judgm. section 754,
wherein it is said:  "It is a general rule that a valid judg-
ment for the plaintiff definitely and finally negatives every
defense that might and should have been raised against
the action; and this is true, not only with respect to fur-
ther or supplementary proceedings in the same cause, but
for the purposes of every subsequent suit between the
same parties, whether founded upon the same or a differ-
ent cause of action.  A party can not relitigate matters
which he might have interposed, but failed to do, in a
prior action between the same parties or their privies in
reference to the same subject-matter."  In Hill v. Lan-
caster, 88 Ky. 338, (11 S. W. 74), this court said: "To allow
a defendant to split his defenses, relying upon one until
judgment is rendered upon it against him, and at the next
term open the judgment and plead another defense, and
so on, would be a mockery of legal justice.  Therefore it
is a universal rule that the final judgment of a court of
competent jurisdiction is not only conclusive of all issues
actually decided, but of all that might and should have
been decided by it."  Did Ball's guaranty obligate him to
do more than to have him convey or have conveyed to the
appellant a right of way of the "width already located and
designated" by the appellant's engineer?  It is said in Joy

v. St. Louis, 138 U. S. 44, (11 Sup. Ct. 243), (34 L. Ed. 843): "Now, the term 'right of way' has a twofold signification. It sometimes is used to describe a right belonging to a party,—a right of passage over any track, and it is also used to describe that strip of land which railroad companies take upon which to construct their roadbed." This definition of "right of way" was recognized as being correct in New Mexico v. United States Trust Co., 172 U. S. 181, (19 Sup. Ct. 128), (43 L. Ed. 407). In our opinion, the language used in the contract indicates that the guarantors only obligated themselves to have conveyed to the railroad company the strip of the width designated by the engineer of the appellant. It excludes the idea that they were to be responsible for property that might be taken outside of the right of way by the railroad company. Ball's claim was not that they had taken the right of way through his land, but that they had taken his property outside of the right of way, by constructing and operating the road on the right of way so as to interfere with his easement of access, and by jarring and injuring his buildings, etc.

### Boyd and Nelson Judgments.

The Maysville & Big Sandy Railroad Company leased its line of road to the Chesapeake & Ohio Railroad Company, the latter company being in possession of the road at the time Boyd and Nelson instituted their actions. Their property was situated along the line of the Maysville & Big Sandy Railroad Company, and they sought to recover damages for the same cause for which Ball recovered judgment. The judgments which they each recovered are attacked collaterally in this proceeding. The averments of the Maysville & Big Sandy Railroad Company's answer in regard to these two judgments are as follows, to wit:

"The defendant, the Maysville & Big Sandy Railroad Company, comes and for further defense to the plaintiff's petition states that the judgments set forth therein, in favor of the plaintiffs, James N. Boyd and Josephine Boyd, his wife, and also the judgments set forth therein in favor of the plaintiffs, Jennie T. Nelson and her husband, Frank Nelson, Bird Franklin and husband, H. F. Franklin, Elizabeth Weare and husband, Nathan Weare, are null and void, because the, defendant was not served with process in the actions wherein said judgments were rendered, nor did it directly or indirectly, in any manner whatever, enter its appearance to either of said actions. It states that a summons issued in each of said actions against this defendant, and upon each of said summonses the sheriff of Mason county, to whom same were directed, made the following return, to wit: 'I executed the within summons on the within-named defendant, Maysville and Big Sandy Railroad Company, on September 23, 1890, by delivering on said date in Maysville, Kentucky, a true copy thereof to F. C. Janowitz, chief agent in Mason county of the Chesapeake & Ohio Railroad Company, which latter corporation at the time, and ever since said summons came to my hands, was controlling and operating the line of railway in Mason county that was built and constructed and was owned by the defendant, Maysville & Big Sandy Railroad Company, which latter corporation has had since this summons came to my hands no officer or agent in Mason county known to me, or that I have been able to find or hear of after diligent inquiry, and which, therefore, can not be served with process in Mason county under the law as it stood prior to the amendment to section 51 of the Code of Practice, approved May 10, 1890. John

W. Alexander, S. M. C.' This was the only return upon said summons, and there was no other summons issued in said actions than these upon which said returns were so made. Nor was there any other service of process upon this defendant than as stated in said returns in either of said actions. Nor was it made to appear in either of said actions, by affidavit or any other manner, that this defendant had no officer or agent in the State of Kentucky, outside of Mason county, upon whom service could be served, under section 51 of the Code, prior to said amendment; and such was not the case. They therefore charge and aver that said judgments are null and void, and of no validity whatsoever, and all subsequent proceedings thereunder were and are null and void."

Before the institution of these suits the Legislature passed an act amendatory to section 51, Civil Code of Practice, the first section of that act being as follows: "Where the defendant corporation is the owner or the lessee of a railway in this State, or the builder or constructor of a railway in this State, and can not be served with summons under the existing laws, then the person or corporation controlling or operating the railway so owned or built or constructed shall be treated as the representative of the defendant, and service of summons upon such of the officers or agents of the persons or corporation operating or controlling the railway as would be required if such controller or operator were the party sued, shall be a sufficient service of summons upon the defendant to the action; but such service must be twenty days before the commencement of the term, and the facts authorizing the same must be made to appear by the return of the officer or the affidavit of some person other than the plaintiff in the action, and the appearence of the defendant to move

for the quashal of the service of the summons shall ope-
rate as an appearance for all the purposes of the action,
and the same shall stand for trial at the succeeding term
of the court, in case the motion to quash shall prevail."
Laws 1889-90, p. 135. The service of summonses in the Boyd
and Nelson cases were made by Alexander, and the return
he made therein was in the language above quoted. The
return was made in an effort to comply with the amend-
ment of the Civil Code of Practice, to which we have re-
ferred. Before entering into a discussion of the questions
raised, it may be added that the amendatory act is con-
stitutional. Railroad Co. v. Shofstall (Ky.) 24 S. W. 1068.
An act of substantially the same import, of the Texas
Legislature, was adjudged to be constitutional in York v.
Texas, 137 U. S. 15, (11 Sup. Ct. 9), (34 L. Ed. 604), and
Kauffman v. Wootters, 138 U. S. 285, (11 Sup. Ct. 298),
(34 L. Ed. 962).

The proceedings in court, after the return of the sum-
monses, differ materially in the Boyd and Nelson cases, and
part of the judgment in the Boyd case is in the following
language:    "The court, having fully considered the de-
fendant's objections to the jurisdiction of the court in this
action, overrules the same, to which the defendant ob-
jects and excepts. The defendant moved the court for
leave to withdraw its special entry of appearance herein,
to which the plaintiffs objected. The court, having con-
sidered the defendant's said motion, sustained the same,
and allowed it to be withdrawn, to which the plaintiffs
excepted." The language indicates that the defendant ob-
jected to the jurisdiction of the court generally, but, as
the defendant then asked leave to withdraw what was
denominated a "special entry of appearance," it is pre-
sumed that the court below understood it to be a special

entry of appearence. The object of the action was to re-
cover damages to real estate, and the venue of the action
was in the Mason Circuit Court. The Maysville & Big
Sandy Railroad Company was a corporation organized un-
der the laws of this State. So it was an action by a citi-
zen of this State against a citizen of the State, and in the
court having jurisdiction of the subject of the action.
Therefore this special entry of appearance could have had
no reference to the jurisdiction of the court as to the
subject of the action. The objection could not have been
to the jurisdiction of the Mason Circuit Court to try the
action, nor could any question have been raised that the
Maysville & Big Sandy Railroad Company could not have
been sued in the Mason Circuit Court by the plaintiff.
The objection went to the jurisdiction of the person, and
the motion could have had reference to nothing except the
sufficiency of the return of the sheriff on the summons.
The purpose of the motion was to quash the return of the
sheriff on the summons, without expressly stating on the
record that that was the purpose of it. If they had mov-
ed to quash the service of the summons, under the act
which is amendatory of section 51, Civil Code of Practice, it
would have operated as an appearance for all the purposes
of the action. It was an effort to evade the effect of the
statute simply by the form of the motion. In our opin-
ion, this could not be done. It must be regarded as a
motion to quash the service of the summons. The court
passed upon the jurisdictional question raised, and ad-
judged that it had jurisdiction of the appellant; and if the
return of the summons did not comply with the law, so as
to bring it before the court, its motion did do so, and the
court had jurisdiction of the subject of the action and of
it. In the case of York v. State, 73 Tex. 651, (11 S. W.

Maysville & B. S. R. R. Co. v. Ball, et als.

869), in passing upon substantially the same question as is here for consideration, the court said: "The appearance of appellant, though by plea, was only to have an adjudication of the insufficiency of the process and service through which he was sought to be brought into court, to give the court jurisdiction over his person. Whether this question be raised by motion or plea, the appearance is for the same purpose and of the same character, and must be given the same effect. In the one case, as in the other, the appearance is made for the sole purpose of questioning the jurisdiction of the court over the person of the defendant." In York v. Texas, 137 U. S. 15, (11 Sup. Ct. 9), (34 L. Ed. 604), the Supreme Court of the United States affirmed the judgment of the Texas Court. It is useless to discuss the question as to the effect of the appellant's effort to withdraw his special entry of appearance, in the face of the Constitutional Statute declaring that, when such entry of appearance is made, the defendant is before the court for all purposes of the action. It is claimed the Nelson judgment is void, upon the ground that the defendant had not been served with process in the action in which the judgment was rendered. The attack on the judgment is not direct, but collateral. It is a well-settled rule that domestic judgments rendered in a court of general jurisdiction can not be collaterally attacked unless the want of jurisdiction appears upon the record. Therefore no evidence is admissible except that which is furnished by the record of the action wherein the judgment was rendered. Of course, the rule is otherwise when a direct attack is made upon a judgment. The answer that the defendant was not served with process, and did not appear in the action, etc., is insufficient, because it also should have alleged that the record shows such to be the case. In Van

Fleet on Collateral Attack (section 855) it is said: "An answer to an action on a domestic judgment, where special pleading is required or attempted, must not only deny service and appearance, but must allege what the record shows or fails to show on these points. . . . Hence an answer to an action on the record of any court must allege that it does not show any service or appearance, and, if the record is that of a superior court, it must allege that it affirmatively shows a want of service." 1 Black, Judgm. section 271, announces the same doctrine, wherein it is said: "When a party seeks in a collateral action to impeach the judgment or decree of a court of superior jurisdiction on the ground that he had no legal notice of the pendency of the action, it is necessary that he should allege in his pleading what, if anything, is shown by the record in relation to the issue and service of process, because, unless the record itself shows that the court never acquired jurisdiction of him, it will be conclusively presumed that the jurisdiction did attach."

Action is not taken upon the contempt proceedings, but the question is reserved for future action of the court. The judgment is affirmed.