# PHILADELPHIA COMPANY *v.* DICKINSON.

CONSTITUTIONAL LAW; STATUTES; PUBLIC OFFICERS; PARTIES TO ACTIONS;
EQUITY; INJUNCTION; JURISDICTION.

1. An unconstitutional statute, in the execution or by the authority of
which an officer of the United States would violate the rights and
privileges of a citizen, affords no justification for his acts, and he
cannot shield himself from the consequences of such acts on the
ground that his action is taken solely in the interest of and on behalf
of the United States; and the United States are not necessary parties
to an action to recover possession of property so unlawfully taken and
held, or to restrain trespasses that would work irreparable injury.
(Following *Fried. Krupp Aktiengesellschaft* v. *Crozier*, 32 App. D.
C. 1.)

2. While, as a general rule, a court of equity has no jurisdiction to enjoin
criminal proceedings, yet, where property rights are involved and
threatened with destruction through the instrumentality of an un-
constitutional law, the jurisdiction of the court of equity will not be
ousted by the fact that the government has chosen to assert its power
by indictment or other criminal proceedings; but, where such a pro-
ceeding has been merely threatened, and not actually instituted, under
a statute claimed to be unconstitutional, and in such a proceeding,
if brought, the question of the constitutionality of the statue could
be raised and carried for final determination to the court of last re-
sort, with no greater delay than if a court of equity assumed jurisdic-
tion, it would seem that the party threatened with such criminal
prosecution is not without adequate remedy at law.

3. The courts of this District, because they have jurisdiction over the per-
son of the Secretary of War, have not, by reason of that fact, the
right to control his action by injunction, in a case where the effect
of his action is to deny the title of the complainant to submerged
land in a navigable river in Pennsylvania, outside of harbor lines
designated by him under supposed authority of an act of Congress;
and, where the question of title to the land is necessarily the funda-
mental question involved, such question should be tried in the courts
of that State. (Following *Columbia Nat. Sand Dredging Co.* v. *Mor-
ton*, 28 App. D. C. 288, 7 L.R.A.(N.S.) 114, 8 A. & E. Ann. Cas. 511,
and *Irrigation Land & Improv. Co.* v. *Hitchcock*, 28 App. D. C. 588.)

4. A cloud on title to submerged land in a navigable river, created by an act of Congress establishing harbor lines across the land, cannot be removed in a suit by the owner of the land against the Secretary of War, resulting from his threatening·to cause the complainant to be criminally prosecuted for violating the statute, but only in a suit to which the United States are parties; and they cannot be sued without their consent.

No. 1982.  Submitted April 8, 1909.  Decided May 4, 1909.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia, sitting as an equity court, sustaining a demurrer to and dismissing a bill for an injunction against the Secretary of War. *Affirmed.*

The COURT in the opinion stated the facts as follows:

The Philadelphia Company filed its bill in the supreme court of the District of Columbia against Wm. H. Taft, then Secretary of War, to obtain an injunction.  The bill alleges that complainant is the owner in fee of a tract of land known as Brunot's island, in the Ohio river, within the county of Allegheny, in the State of Pennsylvania, and within the city limits of the city of Pittsburgh in the said county.  That said island was originally granted to Robert Elliot and Eli Williams by the Commonwealth of Pennsylvania, March 13, 1790, the patent containing no description of said island by courses and distances; that the title to the same subsequently passed from Elliot and Williams by various conveyances, and finally became vested in complainant, and is now, including the land submerged or covered by water hereinafter mentioned, in the possession and occupancy of complainant.  That on April 16, 1858, an act of the legislature of the State of Pennsylvania was passed to establish high and low water lines in the Allegheny, Monongahela, and Ohio rivers, in the vicinity of Pittsburgh.  Under said act commissioners were appointed to determine the boundary lines of land along the shores of said rivers and islands within the same. Said commissioners, in accordance with said law, located the lines of ordinary high and low water marks on said shore, in-

cluding said Brunot's island, which said findings were duly approved by a court, as required in said act. That, by virtue of said proceedings, the right of the owners of Brunot's island to any accretions beyond the lines established by said commissioners was taken away, and, at the same time, said line being the permanent boundary of said island, its owners were no longer subject to any loss or diminution of land by reason of the same being submerged through the avulsion of floods or freshets or through gradual erosion; that is to say, the imperceptible washing away of the shore. That, by virtue of said proceedings and subsequent conveyances hereinbefore referred to, complainant became the owner of said island, including any submerged part thereof, according to the plat of said commissioners, which is made an exhibit to the bill. That subsequently to the establishment in 1865 by said commissioners of the line of high-water mark, a considerable amount of the soil of the shore of said Brunot's island on the so-called back channel, within the said high-water mark, was washed away from time to time by heavy floods and freshets, so that a large part of the upland of the island, that is, the land above high-water mark, became and was overflowed and slightly submerged by water, but said land was not submerged to an extent sufficient to permit of navigation of any kind thereover. That some years ago the United States government, in the interest of navigation, and in order to increase the depth of water in the harbor of Pittsburgh, caused a dam to be constructed across the Ohio river a short distance below said Brunot's island, known as the Davis island dam. The effect of this dam was to decidedly increase the depth of the water in the channel back of Brunot's island, and to cause the water of the river to flow higher upon the land of complainant, and to submerge same to a far greater extent, and in fact to make said water, which submerged complainant's land, navigable at certain times and for certain purposes, which water was not navigable before the construction of said dam. That, on or about January 29, 1895, Daniel S. Lamont, then Secretary of War of the United States, claiming to act by authority of an act of Congress approved September 19, 1890,

fixed and established a harbor line along the shores of said Brunot's island, as shown upon the map constituting an exhibit hereto. That the said Secretary, being informed of and knowing the fact, that the said shore of Brunot's island had been washed away by floods and freshets, and the land partly submerged, as hereinbefore set forth, and claiming to have the right so to do, established said harbor line over and across complainant's land, in so far as said line runs within the commissioners' high-water line, and laid out said harbor line with appropriate monuments to indicate the course thereof. That, although said submerged land was generally covered by water, it was not ordinarily navigable water, and does not and has never constituted, nor does it now constitute, a part of the public navigable waters of the United States, and that no authority was conferred or intended to be conferred by said act of Congress upon the Secretary of War to regulate or interfere with the use of said land by the establishment of harbor lines for or upon the same; and to enforce the observance, as hereinafter shown, the said defendant has acted and is acting in excess of and beyond any authority conferred upon him by said act. That even if said water which submerged the said land of complainant was in fact part of the public navigable waters of the United States, which had flowed upon the land of complainant, and submerged it without being rendered thus navigable by the construction of said dam as the proximate cause thereof, as hereinbefore set forth, the Secretary of War had no right to run said line over said land, and thereby deprive the complainant of the use and enjoyment thereof. That complainant is advised and so states, that it now has, as at all times it has had, the right to repair the damage caused by said floods and freshets, and the backing up and overflowing of said land, and to reclaim said submerged part, as it might need the same, by expelling the water therefrom and filling thereon or by piering and wharfing, keeping at all times within the limits of the part that had been torn away by the violence of the waters. That on February 23, 1907, Hon. Wm. H. Taft, Secretary of War, claiming to have authority so to do by virtue of sec. 11 of the

act of Congress approved March 3, 1899, which is in the exact
language of the 12th section of the aforesaid act of 1890, and
notwithstanding the opposition and protest of complainant, un-
dertook to, and did, approve and sanction a change in the estab-
lishment of the harbor line of 1895 along the back channel of
the Ohio river at Brunot's island, hereinabove referred to as
having been fixed by Secretary Lamont.  That it appears from
the report of the United States engineer in charge, who advised
the change in the harbor line of 1895, that conditions of high
and low water had not changed since 1895, but that as at a por-
tion of said shore the 1895 harbor line ran several hundred
feet outside high-water mark as it then existed, it seemed ad-
visable to change said harbor line so as to coincide with the
actual high-water mark.  A certified copy of said report, with
the order of the Secretary of War, dated February 23, 1907,
confirming and approving the same, and establishing said har-
bor line of 1907, is made an exhibit to the bill.  That recently,
in order to facilitate the delivery of coal for the operation of a
power house for the manufacture of electricity, constructed on
said island, complainant desired to reclaim and use a part of
it which had been covered and partly submerged by water, by
establishing a coal wharf at a point on the back channel of the
Ohio river on Brunot's island, where both the harbor line of
1895 and the harbor line of 1907 run some distance landward
of the said state commissioners' high-water line.  That, accord-
ing to the plans for said wharf, the same will extend out over
complainant's land, but crossing both of said harbor lines, to
the said commissioners' high-water line.  That while com-
plainant was engaged in perfecting said plans, the defendant,
through his representative, the engineer officer of the United
States Army at Pittsburgh, declared to complainant that it had
no right to build upon its said land across either of the said
harbor lines, and notwithstanding the fact that said harbor
lines ran over, and do run over, complainant's land above the
high-water line as established by the said State commissioners,
the said defendant, through his said agent and representative,
refused to allow complainant to reclaim its land or to build its

wharf upon its land outside of the harbor line of 1907, and threatened that, if it undertook to do so, he would prevent it, and cause complainant to be prosecuted, and its employees to be prosecuted and fined by the authorities of the Federal government for violation of the acts of Congress approved September 19, 1890, and March 3, 1899, hereinbefore referred to; said action being taken by the said defendant upon the pretended authority of the said acts of Congress; and complainant believes and charges that it will be subject to criminal prosecution in each and every attempt on its part to reclaim and use any and all parts of the island which hitherto have been torn away by the violent and unusual action of the water. That even if the Secretary of War had authority to lawfully fix and establish said harbor lines of 1895, as fixed and established by him, in virtue of said act of Congress approved September 19, 1890, yet, in doing so, he exhausted the power and authority to establish a harbor line at that place contained in said act, and said act confers no power or authority whatever upon the Secretary of War to change said harbor line of 1895, and establish the new harbor line of 1907, but the pretended establishment of the harbor line of 1907 is absolutely unauthorized and without warrant of law. Complainant further avers that because of the severe penalties prescribed by said act of Congress for the construction or erection of any buildings, wharves, or piers outside of any harbor line established by the Secretary of War, and by reason of the aforesaid threats of the defendant to cause complainant and its servants and agents to be prosecuted and subjected to said penalties and punishments in the event of complainant carrying out its said plan to reclaim said submerged land by placing upon it the structures aforesaid, and the belief of complainant that defendant will do so, complainant is prevented from making any use of its said property, and complainant is advised and so charges that said action on the part of said defendant in establishing said harbor lines, and in threatening to prosecute complainant, and preventing complainant from using its said property, constitutes a taking of said property without just compensation, in violation of the rights of com-

plainant, or as secured by the 5th Amendment to the Constitution of the United States, and that any endeavor on the part of complainant, so long as said harbor line remains unmodified and in effect, will subject complainant to a multiplicity of criminal prosecutions, and it is advised and says that the said harbor line, under the circumstances and by reason of the facts aforesaid, has become and is a cloud upon complainant's title. That, owing to the establishment of said harbor lines, and owing to the actions of the Secretary of War, his representatives and agents, in preventing complainant from using and enjoying his said land outside of said harbor line, said land, by the sanction of the said action of the Secretary of War, will from now on be used by the public, seeking to navigate the water which has submerged same, unless relief be afforded complainant by this court; and that thereby complainant will, in the course of time, suffer irreparable damage by the creation in the public of prescriptive rights thereto. That the land outside of said harbor line of 1907, belonging to complainant, and of the use and benefit of which complainant has been deprived and is being deprived by the action of the defendant, as aforesaid, is in excess of 12 acres in extent, and is of a value of more than $5,000 per acre. That complainant is without any adequate or complete remedy at law, and the interposition of a court of equity is required for its protection in the premises.

The prayers of the bill are: That the harbor line established in 1895, in so far as the same encroaches upon the land of complainant inside of high-water mark, as established by the State commissioners, be declared null and void, and the action of the Secretary of War be annulled and canceled; (2) that the harbor line established by defendant in the year 1907, in so far as it encroaches upon the land of defendant, as the boundaries of the same were fixed by said State commissioners, be adjudged and declared to be null and void, and the order of the defendant, ratifying and approving the same, be adjudged and decreed to be null and void; (3) that, by injunction on final decree, the defendant, all of his agents, attorneys, servants, and representatives, be perpetually enjoined and restrained from instituting,

or causing to be instituted, any criminal proceedings against complainant or its agents or servants, because of its reclamation and occupation of said land or the building thereon, or from otherwise interfering with complainant's use and occupation of said land.

Section 11 of the act approved March 3, 1899, provides that "where it is made manifest to the Secretary of War that the establishment of harbor lines is essential to the preservation and protection of harbors, he may, and is hereby authorized to, cause such lines to be established beyond which no piers, wharves, bulkheads, or other works shall be extended.   *   *   *

"Sec. 12.   That every person and every corporation that shall violate any of the provisions of secs. 9, 10, and 11 of this act, or any rule or regulation made by the Secretary of War in pursuance of the provisions of the said sec. 14, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by a fine not exceeding twenty-five hundred dollars, nor less than five hundred dollars, or by imprisonment (in the case of a natural person) not exceeding one year, or by both such punishments, in the discretion of the court." [30 Stat. at L. 1151, chap. 425, U. S. Comp. Stat. 1901, p. 3541.]

The defendant entered a demurrer to the bill, setting up the following grounds:   1. The proceeding is virtually a suit against the United States.   2. This court has no jurisdiction to restrain the enforcement of a penalty for violation of law. 3. This court has no jurisdiction to restrain the defendant from instituting criminal proceedings against complainant.   4. This court has no jurisdiction to declare or define harbor lines or boundary lines of land outside the District of Columbia and in the State of Pennsylvania.   5. There is no jurisdiction in this court to pass any decree removing cloud upon an alleged title of complainant in realty in the State of Pennsylvania, nor to accomplish the same by declaring the harbor lines referred to in the bill null and void.

Before action upon this demurrer, Secretary Taft resigned the office of Secretary of War, and Luke E. Wright was appointed in his stead, and was substituted for him as a defendant

in the case. Thereafter, the court sustained the demurrer of the defendant, and ordered the bill dismissed. From that decree complainant appealed. Pending appeal, the said Luke E. Wright vacated the office of Secretary of War, and J. M. Dickinson, his successor, has been substituted as a party in his stead.

*Mr. Morgan H. Beach, Mr. W. Graham Bowdoin, Messrs. Marbury & Gosnell, Mr. Samuel McClay,* and *Mr. William L. Marbury* for the appellant.

*Mr. Daniel W. Baker,* United States Attorney for the District of Columbia, and *Mr. Stuart McNamara,* Assistant, for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The jurisdiction to entertain this bill is brought in question by the demurrer, on several grounds.

1. The first of these is that the suit, though nominally against the Secretary of War, is in reality against the United States.

Assuming, from the allegations of the bill, that the complainant is the owner of the submerged land to the line established by the Pennsylvania commissioners, that the establishment of the harbor line thereon is an invasion of its property rights, and that the threatened action of the Secretary of War would work an irreparable damage thereto, we are of the opinion that this objection is not well founded.

An unconstitutional statute, in the execution or by the authority of which an officer of the United States would violate the rights and privileges of a citizen, affords no justification for his acts; and he cannot shield himself from the consequences of such acts on the ground that his action is taken solely in the interest, and on behalf of, the United States. The United States are not necessary parties to an action to recover possession of

property so unlawfully taken and held, or to restrain trespasses that would work irreparable injury. *United States* v. *Lee,* 106 U. S. 196, 220, 27 L. ed. 171, 181, 1 Sup. Ct. Rep. 240; *Pennoyer* v. *McConnaughy,* 140 U. S. 1, 10, 35 L. ed. 363, 365, 11 Sup. Ct. Rep. 699; *Re Tyler,* 149 U. S. 164, 190, 37 L. ed. 689, 697, 13 Sup. Ct. Rep. 785; *Tindal* v. *Wesley,* 167 U. S. 204, 212, 42 L. ed. 137, 139, 17 Sup. Ct. Rep. 770; *American School* v. *McAnnulty,* 187 U. S. 94, 108, 47 L. ed. 90, 96, 23 Sup. Ct. Rep. 33; *Ex parte Young,* 209 U. S. 123, 151, 52 L. ed. 714, 725, 13 L.R.A.(N.S.) 932, 28 Sup. Ct. Rep. 441; *Fried. Krupp Aktiengesellschaft* v. *Crozier,* 32 App. D. C. 1.

2. The second and third grounds of objection are, that a court of equity has no jurisdiction to restrain proceedings in a criminal court, or to restrain a person from instituting criminal proceedings.

The general rule is well settled that a court of equity has no jurisdiction to enjoin criminal proceedings, but there is an equally well-established exception to this rule. It is, that where property rights are involved, and threatened with destruction through the instrumentality of an unconstitutional law, the jurisdiction of a court of equity will not be ousted by the fact that the government has chosen to assert its power by indictment or other criminal proceedings. *Davis & F. Mfg. Co.* v. *Los Angeles,* 189 U. S. 207, 218, 47 L. ed. 778, 780, 23 Sup. Ct. Rep. 498; *Dobbins* v. *Los Angeles,* 195 U. S. 223, 241, 49 L. ed. 169, 177, 25 Sup. Ct. Rep. 18; *Ex parte Young,* 209 U. S. 123, 162, 52 L. ed. 714, 730, 13 L.R.A.(N.S.) 932, 28 Sup. Ct. Rep. 441.

No criminal proceeding has been instituted by the defendant or his authority. The complaint is, that he has threatened and intends to take such a step upon the first actual attempt the complainant shall make to extend its structures beyond the designated harbor line.

If a prosecution be commenced, the question of the constitutionality of the act of Congress can be raised therein and carried for final determination to the court of last resort. If complainant should suspend operations depending such litigation, it

would suffer no greater delay than will result from this form of proceeding. Even if it should continue its operations, it is not to be presumed that the Secretary of War would institute similar proceedings from day to day for the purpose of harassing and intimidating the complainant, while engaged, in good faith, in asserting its rights.

Assuming, then, that the jurisdiction would exist to stay the criminal proceedings, it is not apparent, from the facts alleged, that the complainant would be without adequate remedy at law. We will pass this question, however, and proceed to the consideration of the last objection, which raises a more serious one.

3. That objection is that a court of equity in the District of Columbia has no jurisdiction to pass upon the title to, or decree or define the boundaries of, land in the State of Pennsylvania; or to remove a cloud upon the title to said lands, as this claim of harbor rights is alleged to be.

The contention of the appellant is that the court having jurisdiction of the person of the defendant, has the power to control his actions, notwithstanding the decree may incidentally affect the title to the land, or the boundaries thereof.

We cannot agree with this contention. The limitations of the equity jurisdiction *in personam* have been discussed at length by us in two recent cases to which we refer: *Columbia Nat. Sand Dredging Co.* v. *Morton,* 28 App. D. C. 288, 307, 7 L.R.A.(N.S.) 114, 8 A. & E. Ann. Cas. 511; *Irrigation Land & Improv. Co.* v. *Hitchcock,* 28 App. D. C. 587, 597.

In the first of those cases, the plaintiff, owning land on a stream in the State of Maryland, claimed title to the submerged land to the middle of said stream. The defendant, a private corporation of the District, was personally served with process therein. The complaint was that the defendant was engaged in removing sand from plaintiff's land in the stream, and that its trespass would work irreparable damage. The bill was dismissed because the principal question involved was the title to land in another jurisdiction.

In the second case, jurisdiction was denied to enjoin the Secretary of the Interior from invading, and working irrepar-

able injury to, the plaintiff's land in the Territory of Arizona, in the execution of the general irrigation act of Congress. That case presented substantially the same question as this. The effect of the action of the Secretary of War is to deny the title of plaintiff to the submerged land outside of the designated harbor line. Assuming that the complainant acquired title to land between high and low water marks by grant from the State of Pennsylvania, the first question raised by the action of the officers of the United States is whether it holds that title subject to the public right of navigation, and the authority of the government to regulate the use of it. See, *Gibson* v. *United States,* 166 U. S. 269, 273, 41 L. ed. 996, 1001, 17 Sup. Ct. Rep. 578, and cases cited; *Scranton* v. *Wheeler,* 179 U. S. 141, 162, 45 L. ed. 126, 137, 21 Sup. Ct. Rep. 48. The second question is whether, by gradual erosion of the land on the river, and the undisturbed flow of the waters for so many years, the complainant has lost its right to now claim as land the part that is beyond the low-water mark, under any circumstances. This question of title is necessarily the fundamental question involved in the case, and ought to be tried in the State where the land is situated.

4. Upon the assumption that the complainant has an unquestioned title to all of the land claimed, it is alleged that the action of the Secretary of War has cast a cloud upon that title. It is true, as appellant contends, that a suit to remove cloud from title is *in personam,* and therefore maintainable only in that jurisdiction in which the defendant can be personally served with process, unless, indeed, there be some statute converting it into a proceeding virtually *in rem. Hart* v. *Sansom,* 110 U. S. 151, 155, 28 L. ed. 101, 103, 3 Sup. Ct. Rep. 586; *Arndt* v. *Griggs,* 134 U. S. 316, 320, 33 L. ed. 918, 919, 10 Sup. Ct. Rep. 557; *Lynch* v. *Murphy,* 161 U. S. 247, 251, 40 L. ed. 688, 689, 16 Sup. Ct. Rep. 523; *Dull* v. *Blackman,* 169 U. S. 243, 247, 42 L. ed. 733, 734, 18 Sup. Ct. Rep. 333. But if we assume that the substantial purpose and effect of the decree sought in this case is to remove cloud from title only, it would then be subject to the first ground of objection to the jurisdiction, before

stated.   The cloud upon the title is not created by the threat
of the Secretary to institute a criminal prosecution in case of
any encroachment upon the harbor line, but by the act of Con-
gress and the action long since taken in establishing that line.
Consequently the cloud cannot be removed but by a suit to which
the United States are necessary parties; and they cannot be sued
without their consent.

Being of the opinion that the court below did not err in dis-
missing the bill, its decree will be affirmed with costs.

*Affirmed.*

On application of the appellant, an appeal to the Supreme
Court of the United States was allowed June 1, 1909.