# LYNCH *v.* MURPHY.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF
COLUMBIA.

No. 129. Argued December 18, 19, 1895. — Decided March 2, 1896.

*Arndt* v. *Griggs*, 134 U. S. 316, affirmed to the point that the duty of determining unsettled questions respecting title to real estate is local in its nature, to be discharged in such mode as may be provided by the State in which the land is situated, when such mode does not conflict with some special prohibition of the Constitution, or is not against natural justice.

Applying that doctrine to this case it is held that the decree in the equity cause of *Pippert* v. *English* was not void for want of personal service on English and his wife, as the laws relating to the District of Columbia permit service by publication upon absent defendants.

And further, as the evidence shows that Pippert had no knowledge of the attempt by Mrs. English to incumber the land in question by a deed of trust, the recording of the instrument did not give him constructive notice of it, as the formalities required by law to authorize the recording were not complied with.

That deed of trust was inoperative as a legal instrument.

There being no actual notice, and the recording of the defective deed not operating as constructive notice, the alleged equitable lien is wholly inoperative against those holding under the decree below.

The complainant below was Christeina Murphy, who sued

in her own right and as executrix and trustee under the will of Peter Pippert, her deceased father. By her bill, complainant sought the cancellation of a deed of trust upon certain land in the city of Washington, devised by her father to complainant and to two of the defendants named in the bill, or, in the alternative, the reinstatement of a deed of trust for the benefit of said Pippert which had been cancelled by a judicial decree as hereinafter stated. The deed of trust attacked by the bill purported to have been executed in August, 1874, by Elizabeth English, to one Bean, to secure payment of four notes for $1000 each, payable to the order of James Lynch. It was averred, in substance, that at the time of the execution of the deed of trust the legal title to the land was in Elizabeth English and Andrew Schwartz, Sr., by virtue of a conveyance from Pippert, made July 27, 1874, and the land which it embraced was incumbered by a deed of trust to Pippert given to secure the unpaid purchase money, $10,390.42. It was also alleged that the deed from Pippert to English and Schwartz was annulled by a decree of the Supreme Court of the District of Columbia, in a suit instituted by Pippert to cancel his conveyance on the ground of alleged fraud practised upon him in the transaction. At the time of the institution of said suit the Bean deed of trust had been placed by Mrs. English on her three-fourth interest in the property, bought by herself and Schwartz from Pippert, and it was on the land records of the District of Columbia. Neither Lynch nor his trustee Bean were made parties to the suit.

Relief was sought as to the Bean deed of trust upon the ground that it was executed on behalf of Mrs. English by her husband, who had no proper or competent authority in law to execute the same ; and it was urged at the trial, among other objections, that the power of attorney under which English assumed to execute the deed of trust was defective and was not entitled to record, because of the absence therefrom of a certificate of the official character of the officer before whom, in Michigan, Mrs. English acknowledged the instrument. It was further urged in the bill as ground of relief that the notes to Lynch were made without consideration,

and that the transaction was part and parcel of a scheme. by which English attempted to defraud Pippert, as alleged in the suit of Pippert hereinbefore referred to,. and that the defendant Jane Lynch, claiming to be the owner of the notes secured by said deed of trust, and the heirs at law of Bean, the deceased trustee, were threatening to enforce the deed of trust by advertising the premises for sale thereunder.

The controversy in this court being confined to the question of the validity of the apparent deed of trust to Bean, numerous allegations contained in the bill are unnecessary to be referred to.

Of the pleadings filed on behalf of the various defendants only that of Jane Lynch requires notice. In her answer she set up her ownership of the notes referred to in the Bean deed of trust, claiming that she received them from her husband on the day the notes bore date. She denied any knowledge of the suit to cancel Pippert's conveyance to Mrs. English and Schwartz, and averred that she had no knowledge of the decree in Pippert's suit until very recently, and further averred that her deceased husband parted with full consideration for the notes, and that the transaction was not fraudulent.

While averring that English did have proper and competent authority in law to execute the said deed of trust as the agent of his wife, Mrs. Lynch coupled such averment with the claim that the property purchased from Pippert was in fact paid for by the money of Alexander English, who kept his property in his wife's name so as to be out of the reach of his creditors, and that said English was the real principal, and in giving the deed of trust for the benefit of Lynch he was pledging his own property, though in the name of his wife, for a debt due by him and for which he received the consideration. We quote the following statements in the answer:

"Defendant further says that she is advised and believes, and, therefore, charges, that while the said deed of trust is not technically sufficient in law to constitute a valid deed of trust, yet that it was on the part of said English a pledge of property of which he was the real and equitable owner for a just debt which he owed the said James Lynch, and that the

said deed of trust constitutes an .equitable mortgage upon the said premises which this defendant has the right to have enforced, and that the said Peter Pippert had notice thereof in his lifetime and before the filing of the suit by him hereinbefore referred to; that the complainant herein is not a purchaser thereof, but a mere volunteer, having taken the property as a gift and without paying any value therefor and with full notice of this defendant's claim, and this defendant says that complainant took the land subject to all the equities of this defendant and all other persons whomsoever. Defendant says that the said notes have never been paid, and that it is true that she threatened to enforce the said trust by a sale of said real estate because of the non-payment thereof."

After the cause was at issue, a decree was entered by consent of all parties, appointing a trustee to make sale and ordering a sale of the property affected by the bill. The following provision is contained therein :

"And whereas the said Jane Lynch, in consideration of the provision hereinafter made, is willing to consent to the decree of sale, now it is further ordered, adjudged and decreed that said John C. Heald, immediately upon the completion of such sale, shall pay into the registry of this court the sum of eight thousand dollars of the proceeds of said sale, and that the same shall be invested and reinvested under the direction of the court and held until the final determination of this cause in the court of last resort, and that said sum of eight thousand dollars and the notes, securities or property in which the same shall from time to time be invested and the increase thereof as to all parties interested in said real estate shall stand in the place and stead of said real estate, and that if in this proceeding it shall ultimately be decided that the defendant Jane Lynch had a valid lien upon said real estate at the time the bill in this case was filed for the sum of four thousand dollars, with interest as aforesaid, or only part thereof, then said sum of eight thousand dollars and the increase thereof, or so much thereof as shall be necessary, shall be applied for the satisfaction of such lien."

A sale of the property was had and the fund representing the Lynch claim was paid into the registry of the court.

After the taking of testimony the cause came on for hearing, and, on May 13, 1891, the court at special term entered a decree adjudging the deed of trust to Bean to be null and void; that the fund in the registry of the court belonged to the estate of Peter Pippert, and under his will passed to the complainant and the defendants Edward Marsh and Florence Marsh. On the appeal of Jane Lynch, the general term, on May 31, 1892, affirmed the judgment of the special term.

Thereupon Mrs. Lynch took an appeal to this court.

*Mr. William G. Johnson* and *Mr. Calderon Carlisle* for appellant.

*Mr. A. S. Worthington,* (with whom was *Mr. J. C. Heald* on the brief,) for Murphy, appellee.

*Mr. Henry E. Davis* for Edward Marsh and Florence Marsh, appellees.

MR. JUSTICE WHITE, after stating the case, delivered the opinion of the court.

The question for our determination is whether or not appellant had a valid lien, legal or equitable, upon the real estate in question at the time the bill of complaint was filed.

We will premise that the decree in the equity cause of *Pippert* v. *English et als.* was not void because English and his wife were not personally served with process. Constructive service by publication was authorized by § 787 of the Revised Statutes relating to the District of Columbia. *Hart* v. *Sansom,* 110 U. S. 151, relied upon as supporting the proposition that the rights of Mr. and Mrs. English in the land could not be effected by such constructive notice, and that the decree rendered thereon was not entitled to recognition in a Federal court, does not support the contention. The *Hart case* was explained in *Arndt* v. *Griggs,* 134 U. S. 316, in

which last case it was held that the duty of determining unsettled questions respecting the title to real estate was local in its nature, to be discharged in such mode as might be provided by the State in which the land was situated, where such mode did not conflict with some special inhibition of the Constitution and was not against natural justice; and we held (pp. 327–328) that nothing inconsistent with this doctrine was decided in *Hart* v. *Sansom.*

From the evidence contained in the record, we are satisfied that when Pippert instituted the action to annul his conveyance to Mrs. English and Andrew Schwartz, Sr., he did not have actual knowledge that Mrs. English or any one claiming to represent her had incumbered or attempted to incumber the land. The question then presents itself: Was the record of the alleged deed of trust to Bean constructive notice to Pippert? We are relieved from extended discussion in answering this question by the admissions made in the answer of defendant Lynch and in the brief of her counsel.

In the bill of complaint it is charged that Alexander English was without any proper or competent authority in law to execute said deed of trust. This refers to the authority of English to execute the deed of trust, as the attorney of his wife. This allegation is admitted by the answer, for while it is averred therein, "upon information and belief, that said Alexander English did have proper and competent authority in law to execute the trust to said William W. Bean," it proceeds to aver in connection with this allegation that "the true facts in relation thereto" were, in substance, that the payment made by English when the property was purchased from Pippert was made with money belonging to English personally, that he had personally received the benefit of the consideration from Lynch, and that the said deed of trust, "while not technically sufficient in law to constitute a valid deed of trust, . . . was on the part of said English a pledge of property of which he was the real and equitable owner for a just debt which he owed to said James Lynch, and that the said deed of trust constitutes an equitable mortgage upon the said premises which this defendant has the right to have enforced."

In the brief of counsel for appellant the matter is thus stated: "The only remaining objection to the Lynch trust is the defective character of the instrument. It is admitted in the answer that the instrument is inartificially drawn and as a mortgage is technically defective." And the argument then proceeds to maintain that the evidence clearly established a good equitable mortgage in favor of appellant.

In the face of these concessions it becomes unnecessary to determine what were the particular defects rendering the writing in question legally invalid.

Having concluded that the deed of trust was inoperative as a legal instrument, we recur to the question whether or not its spreading upon the land records of the District constituted constructive notice. As said by Pomeroy in § 652 of his work on Equity Jurisprudence:

"The record does not operate as a constructive notice, unless the instrument is duly executed, and properly acknowledged or proved, so as to entitle it to be recorded. The statutes generally require, as a condition to registration, that the instrument should be legally executed, and that it should be formally acknowledged or proved, and a certificate thereof annexed. If a writing should be placed upon the records with any of these preliminaries entirely omitted or defectively performed, such a record would be a mere voluntary act, and would have no effect upon the rights of subsequent purchasers or incumbrancers."

Story (Eq. Jur. 13th ed. § 404) states the doctrine thus:

"The doctrine as to the registration of deeds being constructive notice as to all subsequent purchasers, is not to be understood of all deeds and conveyances which may be *de facto* registered, but of such only as are authorized and required by law to be registered, and are duly registered in compliance with law. If they are not authorized or required to be registered, or the registry itself is not in compliance with the law, the act of registration is treated as a mere nullity; and then the subsequent purchaser is affected only by such actual notice as would amount to a fraud."

It follows that the recording of the instrument under con-

sideration was a mere nullity in a jurisdiction such as the District of Columbia, (Rev. Stat. Dist. Col. § 440,) where particular formalities are required to authorize the recording. To the cases referred to by the authors first cited may be added *Dohm* v. *Haskin*, 88 Michigan, 144, and *Musgrove* v. *Bonser*, 5 Oregon, 313, 315–316, the defect in the recorded instrument, in both cases, being the absence of a certificate as to the official character of the officer before whom a deed was acknowledged. See, also, 3 Washburn Real Prop. * 592; Wade, Notice, §§ 124, 125, 126.

The effect of the decree in Pippert's suit, annulling his conveyance to Schwartz and English, was that Pippert, as the consideration of such cancellation, surrendered the benefit of his vendor's lien and the security of the deed of trust. When this result was accomplished the unpaid purchase money amounted to $10,390.42, and was in fact but $500 less than the entire consideration for the sale, and practically represented the full value of the property. By the reconveyance to him, under the decree, Pippert stood in the position of a *bona fide* purchaser of the property for value; and, as we have found he did not have actual or constructive notice of the real or supposed equity of Mrs. Lynch, there would seem to be no ground upon which to base the claim that at the time of the institution of this suit Mrs. Lynch had an equitable mortgage or lien upon the property. Let us assume, for the sake of the argument, that, as claimed by counsel for the appellant, Alexander English should be regarded in equity as having been the real owner of the property at the time of the transaction with Lynch, though the legal title was in his wife; that Lynch paid to English full consideration for the cash paid and notes delivered by English, and that Lynch accepted the notes on the faith of the security of the property in question. As against English it is clear, under the authorities, that from the nature of the transaction, upon the hypothesis we have stated, a lien would have arisen in equity against English's interest in the land. Jones on Mortgages, §§ 162, 163, 166, 168, 169; Story Eq. Jur. §§ 1020, 1231; *Peckham* v. *Haddock*, 36 Illinois, 38; *McClurg* v. *Phillips*, 49 Missouri, 315; *Gale* v.

*Morris,* 29 N. J. Eq. 222, 224. But a *bona fide* purchaser for value of property, subject to an equitable mortgage, without notice of such mortgage, takes the property free of the equitable mortgage. Jones on Mortgages, § 162, p. 139, citing *Watkins* v. *Reynolds,* 123 N. Y. 211. *Watkins* v. *Reynolds* was a case where a *cestui que trust* for life executed a mortgage in fee on the trust estate, and, after her death, the remainderman in fee executed, under seal, an unattested paper covenanting for sufficient consideration that the mortgage should continue to be a lien on the land. Afterwards he sold and conveyed to another, who paid a sum in cash, and contracted to assume certain mortgages and pay certain debts of the vendor to third persons, equal in amount to the remainder of the purchase price. The cash payment and part of these debts were made before the purchaser had actual notice of the agreement to continue the mortgage lien. Upon this state of fact the court, speaking through Peckham, J., held that since the purchaser's agreements were made before notice, and remained in full force after notice, there was no equitable lien against the property in favor of the mortgagee for the purchase money unpaid at the time of such notice.

That notice to Pippert, actual or constructive, was an element essential to the survival of the lien as against Pippert, is admitted in the answer of Mrs. Lynch, expressed by the averment that Pippert had notice of the existence of the supposed deed of trust. As that allegation was not established by the evidence, but the contrary was proven, it follows that the claim of a lien or a mortgage upon the property in favor of Mrs. Lynch has not been made out. And this conclusion inevitably results from the following additional considerations.

Pippert instituted and prosecuted his suit for cancellation of his conveyance against all persons known to him as claiming an interest in or incumbrance on the property. He did what the law required, in order to make his judgment binding upon all the world, and when the court divested Mrs. English of all her interest in the property, appellant's alleged rights, acquired through her, not having been legally recorded before judgment, were divested by the decree as effectually as if ap-

pellant had been a party. There being no actual notice, and the recording of the defective deed not operating as constructive notice, the alleged equitable lien is wholly inoperative against those holding under the decree.

The decree of the general term of the Supreme Court of the District of Columbia must be

*Affirmed.*

MR. JUSTICE BREWER, not having heard the argument, took no part in the decision of this cause.