EDWARDS v. SMITH *et al.*

No. 3306. Opinion Filed July 20, 1914.

(142 Pac. 302.)

1. **APPEAL AND ERROR**—Summons in Error—Waiver of Service—Validity—Presumption. Where on appeal from a judgment of the trial court to the Supreme Court summons in error is waived by the attorneys of record in the trial court and before submission of the cause it is briefed in behalf of the interests of defendant in error by such attorneys of record, this court, under sections 5238, 5239, Rev. Laws 1910, may rely on the validity of such waiver and the authority of such attorneys to appear.

2. **SAME**—Decision—Death of Party. Where the record and case-made on appeal is regular on its face and clearly shows on its face that this court has jurisdiction to determine the issues involved on appeal, a decision of this court is not void although one of the parties defendant in the trial court may have died, and although no suggestion of the death of such party has been made to this court.

3.  **JUDGMENT—Validity.** A judgment is not void in the legal sense for want of jurisdiction, unless its invalidity and want of jurisdiction appears on the record; it is voidable merely.

4.  **SAME—Decision on Record and Case-Made—Collateral Attack.** A decision of the Supreme Court, rendered upon a record and case-made regular in all things, and which clearly shows facts sufficient to give the Supreme Court jurisdiction, if defective at all for want of jurisdiction, is not void, but merely voidable, and cannot be attacked collaterally.

5.  **MUNICIPAL CORPORATIONS—Vacation of Street—Ownership of Land.** Whenever a street or avenue is vacated by a city council, the land embraced in such street or avenue at once attaches itself in the nature of an accretion to the adjacent and abutting lots in proportion to the frontage, and becomes the private property of the adjacent and abutting lot owners.

(Syllabus by Harrison, C.)

*Error from District Court, Oklahoma County;*
*George W. Clark, Judge.*

Action by W. M. Smith against the executor of the estate of Mary E. Taylor to foreclose a mortgage, and against R. J. Edwards and another, to remove cloud from title on certain lots. From the judgment R. J. Edwards brings error. Modified and affirmed.

*Shartel, Keaton & Wells,* for plaintiff in error.

*Scothorn, Caldwell & McRill,* for defendants in error.

Opinion by HARRISON, C. This appeal is from a judgment with which neither party to the suit is satisfied. Both filed motions for new trial in the court below, and each has filed petition in error here. That is, Edwards filed petition and Rodesney, executor, cross-petition in error. The judgment in question was as to title to certain real estate, including lots 24, 25, and 26, block 17, Brusha's Second addition to Oklahoma City. The lots in question were each 25 feet in width, facing north on Seventh street and extending south to the alley between Sixth and Seventh streets. Each party claimed all the lots. The court decreed title in R. J. Edwards to all of lot 24 and a ten-foot strip off the west side of lot 25, and decreed the remaining fifteen-foot strip on the east side of lot 25, and all of lot 26, to the estate

of Mary E. Taylor, deceased, through C. A. Rodesney, executor with the will annexed. It is necessary to an understanding of the questions involved in this case to review some previous litigation over the same property, the material facts in which are substantially as follows: John W. Brusha made final proof on the N. W. ¼ of section 33, township 12, north, range 3, west Indian meridian. Thereafter he and his wife conveyed the S. E. ¼, about 40 acres of this tract, to Howard T. Parlier. On April 8, 1898, Howard T. Parlier conveyed a portion of his tract to Cook and Edwards, describing same by metes and bounds and following such description with the following language:

"Provided, however, that a strip of land 60 feet wide on the east and a strip of land 80 feet wide on the south and a strip of land 100 feet wide on the west of said tract of land is hereby reserved for street purposes when said quarter section of land shall be platted."

Also on April 8, 1898, Parlier reconveyed all the balance of his tract to the Brushas, or rather to Ollie Brusha. In February, 1899, Edwards, who had bought Cook's interest, platted the portion belonging to him, as "Edwards' addition" to Oklahoma City, dedicating for street purposes on the west side of his tract the 40-foot strip as Edwards avenue, which is a portion of the land in controversy. In November, 1900, Ollie Brusha and husband platted their portion of the land into what was known as "Brusha's Second addition" to Oklahoma City, and on November 11, 1901, Ollie Brusha and husband conveyed to Mary E. Taylor lots 24, 25, and 26, block 17 of said Brusha's Second addition, and on December 9, 1901, R. J. Edwards brought an ejectment suit against Ollie Brusha and Mary E. Taylor, claiming that the same land, which had been conveyed to Mary E. Taylor by the Brushas, had been conveyed to him by a deed from Howard T. Parlier. This cause was not tried until in April, 1904, when judgment was rendered in favor of Edwards. In the meantime, however, on November 14, 1903, Mary E. Taylor died, and on December 11, 1903, one John R. Thompson was appointed executor of her estate, and on May 2, 1904, the judgment rendered in favor of Edwards in April was set aside and a new trial granted

defendants, and on November 12, 1904, a second trial was granted defendants, and judgment rendered in favor of the defendants, including the estate of Mary E. Taylor and against R. J. Edwards. Edwards appealed from such judgment to the Supreme Court of the territory, and in February, 1907, the Supreme Court rendered an opinion in such cause, the same being No. 1720, and entitled *Edwards v. Brusha et al.,* reported in 18 Okla. 234, 90 Pac. 727, affirming in part the judgment of the court below, but reversing as to the Taylor lots. About a month before her death Mary E. Taylor executed a note to W. M. Smith, and to secure a payment of same gave a mortgage on the lots she had purchased from the Brushas, to wit, 24, 25, and 26, block 17, Brusha's Second addition to Oklahoma City, and in March, 1907, W. M. Smith brought suit on the note in question and to foreclose a mortgage on the Mary E. Taylor lots, and made John R. Thompson, executor of Mary E. Taylor's estate, R. J. Edwards, Ollie and John W. Brusha, and the city of Oklahoma City all parties to the action, on the theory that each of these defendants claimed an interest in the lots, and had been parties to the former litigation. Before the cause was tried, however, Thompson died, and was succeeded as executor by C. A. Rodesney, one of the defendants in error here. The Brushas and city of Oklahoma City dropped out of the suit, and judgment, as above stated was rendered in favor of R. J. Edwards for all of lot 24 and a ten-foot strip off the west side of lot 25, and in favor of Mary E. Taylor's estate for the remaining fifteen feet off of lot 25 and all of lot 26, and also rendered judgment for foreclosure in favor of W. M. Smith on the portion of the lots decreed to Mary E. Taylor's estate. Hence the question to be determined here is between R. J. Edwards and C. A. Rodesney, executor of Mary E. Taylor's estate, and depends for determination upon the effect of the opinion of the Supreme Court of the territory in the former case; that is, the ejectment suit of R. J. Edwards against the Brushas and Mary E. Taylor.

Rodesney contends that the former opinion was void as to Mary E. Taylor's rights, for the reason that no suggestion of her

death was made to the Supreme Court, and no summons in error on her legal representative, and that therefore, the Supreme Court having no jurisdiction, the judgment of the trial court rendered in her favor November 12, 1904, not having been properly appealed from, became final and binding, and that the case at bar, in so far as it affects her interests, is *res judicata.* On the other hand, it is contended by Edwards that after the opinion was rendered in said cause No. 1720 in the Supreme Court, John R. Thompson, Mary E. Taylor's executor, filed a motion to vacate the decision of the Supreme Court upon the jurisdictional grounds above stated, supporting same by affidavits, and that such motion was acted upon and overruled by the Supreme Court, and that therefore such jurisdictional question is now *res judicata* and the opinion of the Supreme Court final. It is further contended by Edwards: That after the mandate in said cause 1720 had been returned to the district court and before the mandate was spread on the records of the court, John R. Thompson appeared in person and by attorney, as the executor of Mary E. Taylor's estate, and filed an application under section 899, Wilson's Statutes, for assessment of damages against her grantees, the Brushas. That afterwards, on motion of plaintiff to spread the mandate of the Supreme Court on the record, the following journal entry was made:

"Now on this 25th day of January, 1908, this matter coming regularly on to be heard, the plaintiff appeared by Shartel, Keaton & Wells, his attorneys, the defendant Ollie Brusha appeared by her attorneys, Horton & Meister, and John R. Thompson, executor of the estate of Mary Elizabeth Taylor, deceased, appeared in person, as well as by Fred S. Caldwell, his attorney. Thereupon came on to be heard the application of said executor to withdraw the motion or application heretofore filed by him, asking that he be substituted as party defendant in this case in place of Mary Elizabeth Taylor, deceased, and that his damages against the defendant Ollie Brusha on her warranty of title to the land in controversy be assessed, to the withdrawal of which application the plaintiff objected. The court being fully advised in the premises allows said application or motion to be withdrawn so far as the same asks for any relief. To which withdrawal the plaintiff then and there duly excepted.    *    *    *"

That thereby such executor made a general appearance in such cause and asked to be substituted as party defendant instead of Mary E. Taylor, deceased, and cannot now be heard to complain of alleged jurisdictional defects in the appellate procedure. The contention as to the motion filed in the Supreme Court is met by the executor with the fact that the motion filed in the Supreme Court by the executor to vacate the decision of the Supreme Court was filed in the Supreme Court and acted upon after the mandate of the Supreme Court had been spread of record in the district court, and that, therefore, the order of the Supreme Court overruling such motion was void because it had lost jurisdiction of the cause.   But as we view the issues presented by this record, these questions are immaterial to a proper determination of the cause, for it appears from the record that at the first trial of the ejectment suit of R. J. Edwards against the Brushas and Mary E. Taylor, judgment was rendered in favor of Edwards and against the Brushas and Mary E. Taylor, and that some days thereafter, upon the application of defendants, such judgment was set aside and a second trial granted to defendants.   The record here fails to show that at this time any formal suggestion of the death of Mary E. Taylor was made, but it does show that John R. Thompson had been duly appointed and was then acting as her executor with will annexed, and that a second trial was granted to defendants, and that at such second trial judgment was rendered in favor of the defendants, the Brushas and Mary E. Taylor against Edwards, that Edwards appealed from such judgment, and that summons in error in such appeal was waived by the attorneys who represented Mary E. Taylor's estate and obtained a judgment in her favor at the second trial.

It further appears that such attorneys briefed the case in the Supreme Court in behalf of her interests.   It is now contended, however, that such attorneys were not authorized to appear for her in the Supreme Court, nor to waive summons in error issued to her or her legal representative.   Whether this be true or not, the appeal in such case presented itself regularly

on its face to the Supreme Court. The Supreme Court, in the absence of any suggestion to the contrary, had a right to rely on the validity of waiver of summons by the attorneys of record in the court below. See sections 5238, 5239, Rev. Laws 1910. Therefore such decision of the Supreme Court, if defective at all, and we are not deciding whether it was or not, was not void.

In *Meisenheimer v. Meisenheimer,* 55 Wash. 32, 104 Pac. 159, 133 Am. St. Rep. 1005, the Supreme Court of Washington said:

"A judgment is not void unless its invalidity appears on the record, and an erroneous determination of a fact properly submitted does not render it void. * * * "

In Freeman on Judgments (3d Ed.) 116, the rule is stated:

"A judgment rendered without in fact bringing the defendant into court, unless the want of authority over them appears in the record, is no more void than if it were founded upon a mere misconception of some matter of law or of fact, occurring in the exercise of an unquestionable jurisdiction."

Bailey on Jurisdiction, sec. 136:

"A judgment is not void in the legal sense unless its invalidity appears upon the record. It is voidable merely."

In *Munch v. McLarin,* 9 Wash. 676, 38 Pac. 205, the Supreme Court of Washington said:

"By the filing of the complaint, the court obtained jurisdiction of the subject-matter, and by the service of the summons, of the person of the defendant; and every fact not negatived by the record will be presumed in aid of the judgment, and it will only be held void when it affirmatively appears from the record that the court had no jurisdiction to render it."

In *Cochrane v. Parker,* 12 Colo. App. 169, 54 Pac. 1027, the Court of Appeals of Colorado said:

"Loss of jurisdiction to render a particular judgment because of the death of a party does not make it subject to collateral attack, as being wholly void, unless the fact appears of record. * * * It would be an anomalous doctrine to hold that in any case the solemn judgment of the highest judicial tribunal in the state could be impeached, disregarded, and set aside by a court of inferior jurisdiction, but much more extraordinary would it

be to so hold when nothing appeared upon the record in the Supreme Court to question its full and complete jurisdiction to render the judgment which it did.   *   *   * "

In *Ballerino v. Superior Court of Los Angeles,* 2 Cal. App. 759, 84 Pac. 225, the Supreme Court of California held:

"The judgment of a court of general jurisdiction cannot be impeached in a collateral proceeding for want of jurisdiction of the subject-matter unless the defect of jurisdiction appears on the face of the record."

In the decision in question here, there was nothing whatever in the record to even suggest a lack of jurisdiction of the Supreme Court. On the contrary, the record affirmatively showed jurisdiction over both the person and the subject-matter in the Supreme Court. The judgment was therefore not void. Although it might have been voided in direct attack, yet it cannot be collaterally attacked in this proceeding. *Hyatt v. Cochran,* 69 Ind. 436; *Graham v. Loh,* 32 Ind. App. 183, 69 N. E. 474; *Newcomb's Ex'rs v. Newcomb,* 76 Ky. (13 Bush) 544, 26 Am. Rep. 222; *Maysville & B. S. R. Co. v. Ball,* 108 Ky. 241, 56 S. W. 188; *Allured v. Voller,* 112 Mich. 357, 70 N. W. 1037; *Gillilan v. Murphy,* 49 Neb. 779, 69 N. W. 98; *Iiams v. Root,* 22 Tex. Civ. App. 413, 55 S. W. 411; *Greenway v. De Young,* 34 Tex. Civ. App. 583, 79 S. W. 603; *Hoagland v. Hoagland,* 19 Utah, 103, 57 Pac. 20.

Also in *Rice v. Wollery,* 38 Okla. 199, 132 Pac. 817, wherein the same question was before this court, the first section of the syllabus reads:

"The judgment or decree of a domestic court of general jurisdiction, reciting that the defendant was duly served with summons for more than 41 days prior to the date of the trial by publication of the warning order, as required by law, is conclusive on collateral attack, and cannot be contradicted by extrinsic proof."

Therefore the decision of the Supreme Court became final as to the questions and rights of parties therein determined. It becomes necessary, then, to examine such decision and ascertain what was decided. Such decision, in so far as it affects the lots

in controversy in this case, is as follows (18 Okla. 242, 90 Pac. 729):

"The judgment of the district court of Oklahoma county is affirmed as to the 40-foot strip of land embraced in Edwards avenue and reversed as to the 60-foot strip across the west end of the tract platted by Edwards and parallel with Edwards avenue. And it is ordered and adjudged that the plaintiff, Robert J. Edwards, is the owner and entitled to the possession of a strip of land 60 feet wide, and 300 feet long, immediately adjacent to Edwards avenue, and parallel with said avenue, immediately west of block 1 of Edwards' addition to Oklahoma City, being part of the N. W. $\frac{1}{4}$ of section 33, township 12 north, range 3 W., and that the defendants Ollie Brusha and Mary Elizabeth Taylor * * * keep him out of the possession of said land, and that he have and recover of said defendants the possession of said land, and that he recover all the costs in said cause made in the district court and one-half of the costs in this court, and that one-half of the costs in this court be taxed to the said plaintiff in error."

It also appears from such decision that the reason the judgment of the lower court was reversed as to the 40-foot strip was that the record in such case showed that such 40-foot strip had been dedicated by Edwards to the city of Oklahoma City as an avenue, and the court held that Edwards had no right to recover possession of same, but that if any person was adversely holding possession of same, such possession was in violation of the city's rights, and the city could, by proper proceeding, oust such parties from possession. But it appears in this record that the city had abandoned such 40-foot strip as an avenue, and had opened up a street on other ground. The question then was whether the 40-foot strip, after being abandoned by the city, went back to Edwards or went back to the Brushas and their grantee, Mary E. Taylor. The court below held that it went back to Mary E. Taylor, and so decided. But the Supreme Court, in its decision aforesaid, decided that this strip in question came within the metes and bounds of the tract of land conveyed to Edwards and Cook by Howard T. Parlier. This being true, such strip being between lots belonging to Edwards on each side, it would under the statutes, revert to Edwards.

Section 688, Comp. Laws 1909 (section 588, Rev. Laws 1910), provides:

"Whenever any street, avenue, alley, or lane shall be vacated, the same shall revert to the owners of real estate thereto adjacent, on each side, in proportion to the frontage of such real estate.  *    *    *"

In *Arkansas Valley & W. Ry. Co. v. Bullen,* 31 Okla. 36, 119 Pac. 414, this court in construing such statute held:

"Whenever a street is vacated by a city council, the land embraced in said street at once attaches itself in the nature of an accretion to the adjacent and abutting lots in proportion to the frontage and becomes the private property of the adjacent and abutting lot owners."

It follows, therefore, that, the 40-foot strip in controversy here having been abandoned or vacated by the city and other grounds appropriated for street purposes, such 40-foot strip reverted to the adjacent lot owner as prescribed by statute and as construed by this court in *Arkansas Valley & W. Ry. Co. v. Bullen, supra,* and R. J. Edwards being the owner of the lots on each side of and adjacent to such strip, it reverted to him and his grantees, as the case may be.

The decision of the trial court is therefore affirmed as to lot 24 and a ten-foot strip off of the west side of lot 25, and reversed and remanded as to the fifteen-foot strip off the east side of lot 25 and all of lot 26, with instructions to render judgment decreeing title to said 40-foot strip, the same being fifteen feet off the east side of lot 25 and all of lot 26 in block 17 of what is known as Brusha's Second addition to Oklahoma City in R. J. Edwards and his grantees, as the case may be, and, the contentions of plaintiff in error being in all things sustained, the costs of this action should be adjudged against defendants in error.

By the Court:   It is so ordered.