## CUSHING v. CUMMINGS et al.

No. 8608—Opinion Filed March 18, 1919.

(179 Pac. 762.)

(Syllabus.)

**1. Mortgages — Consideration for Assumption.**

In an action by the assignee of a promissory note to foreclose a mortgage in real estate, and for money judgment on his covenant of assumption against a purchaser thereof (whose deed, according to the pleadings, provided for "a good title"), where it is made to appear that, in a former suit by the rightful owner in which the original mortgagee and payee of the note (prior to assignment) and the purchaser were defendants, the deed of the purchaser and the mortgage were, by a valid decree therein rendered, canceled and removed as clouds on the title of the owner, there being a total failure of title in the purchaser, and of con-

sideration for the covenant of assumption, no recovery thereon will lie.

**2. Process — Publication — Nonresident Parties—Statute.**

A state has power by statute to provide for the adjudication of titles to real estate within its limits as against nonresidents who are brought into court only by publication.

**3. Same.**

Service may be made by publication in actions brought under sections 4671 and 4672, Revised Laws, where any or all the defendants reside out of the state, or where it is stated in the affidavit for service by publication that the plaintiff with due diligence is unable to make service of summons upon such defendant or defendants within the state, and in actions which relate to, or the subject of which is, real or personal property in this state, where any defendant has or claims a lien or interest, actual or contingent, therein, or the relief demanded consists wholly or partly in excluding him from any interest therein, and such defendant is a nonresident of the state, or a foreign corporation, as provided in section 4722, Revised Laws.

**4. Judgment—Service by Publication—Collateral Attack.**

A decree, made upon service by publication, in a case in which such service is authorized, which recites that "each of the defendants has been duly notified more than 20 days prior to this date of the pendency of this action, as required by law, by publication of notices thereof for three consecutive weeks in Coal county, Okla." will, on collateral attack on such decree, be held a sufficient compliance with section 4725, Revised Laws, providing the manner of publication and fixing the time within which the defendants thus to be served may answer.

Error from District Court, Coal County; J. H. Linebaugh, Judge.

Action by Ada T. Cushing, "executrix of the estate of Francis J. Cushing deceased," against Robert M. Cummings and others. Judgment for defendants on demurrers to separate amended replies, and action dismissed, and plaintiff brings error. Affirmed.

Tibbetts & Green, for plaintiff in error.

J. F. McKeel, for defendant in error Chism.

Brunson & Shirley, for defendants in error Ben Finley, Annie Finley, Lita Billy, C. M. Threadgill, and Klara May Threadgill.

SHARP, J. Plaintiff's action was to recover judgment on a promissory note, executed by defendant Cummings and wife to the Mortgage & Debenture Company, Lim-

ited, on the 24th day of March, 1908, and to foreclose a real estate mortgage made contemporaneously therewith on 340 acres of land in Coal county; and which note was indorsed and delivered to plaintiff on January 8, 1913, and for personal judgment against W. P. Chism, who had purchased the mortgaged premises from Cummings and wife and assumed the payment of the mortgage. The other defendants, it was charged in the petition, had, or claimed to have, some right, title, interest, or estate in and to the mortgaged premises the exact nature of which was unknown to plaintiff, and which it was sought to have determined and foreclosed. The answer of the Finleys, Threadgills, and Lita Billy, among other things, set up that the land in question was allotted to Albert Billy, an enrolled full-blood Choctaw Indian, who died during the year 1907, and prior to statehood, intestate and without issue, leaving as his sole surviving heirs at law the defendants Ben Finley and Lita Billy; that on or about January 26, 1910, said Lita Billy, as plaintiff, instituted a suit in the district court of Coal county against the unknown heirs of D. T. Gray, deceased, W. P. Chism, and the Mortgage & Debenture Company, Limited, in which defendant Ben Finley was, during the progress of the action, made a party defendant; that thereafter, and on the 27th day of September, 1910, a decree was rendered in said suit, canceling the mortgage of the Mortgage & Debenture Company, Limited, and the deed of conveyance to W. P. Chism, and to the unknown heirs of D. T. Gray, deceased. A copy of the decree was attached to the answer as an exhibit thereto. The answer further charged that defendants Lita Billy and Klara May Threadgill were the owners each of an undivided one-half interest in and to the property, the latter having purchased the interest of defendant Ben Finley; that neither Robert M. Cummings nor Allie B. Cummings, his wife, ever having owned any interest in the lands, as found and determined by the decree, and, the mortgage by them made to the Mortgage & Debenture Company, Limited, having been by such decree canceled and held for naught, plaintiff was not entitled to recover. The amended answer of defendant Chism denied that on the 24th day of March, 1908, or at any other time, the defendants Cummings and wife were the owners of the land by them mortgaged; admitted his purchase of the land from Cummings, and the assumption of the plaintiff's mortgage; but charged that, neither of the grantors therein ever having owned the premises, or any interest therein,

the consideration for his promise to pay the mortgage had "wholly failed, and this defendant has long since suffered a recovery of said premises." The defendant pleaded the judgment of September 27, 1910, by which the latter mortgage was canceled, as was the deed of conveyance from Robert M. Cummings and wife to him; and charged that the defendant's promise was collateral to the promise of the makers of the note sued on, and that the sole consideration therefor was that said Cummings and wife should convey to him "a good title" to the land purchased. Other defenses are pleaded, not material to a determination of the case in this court. The rendition of the decree in the district court of Coal County on September 27, 1910, is admitted. The case is before us on demurrers of defendants to the separate amended replies of the plaintiff. It does not appear that service of summons was ever had on defendants Robert M. Cummings and Allie Cummings, his wife. The defendants Christian Wainwright, and the unknown heirs of D. T. Gray, deceased, have passed out of the case, or at least their rights do not appear to be involved. Judgment was rendered on the demurrers in favor of defendants, and plaintiff's action dismissed.

The first error urged is that the court should have applied the demurrer of the defendant Chism to his answer, and rendered judgment against him in favor of plaintiff for the amount of the Cummings note, the payment of which he had assumed. Counsel cite the following opinions of this court in support of their contention: Jones v. Perkins, 43 Okla. 734, 144 Pac. 183; Midland Savings & Loan Co. v. Neighbor, 54 Okla. 626, 154 Pac. 506; and United States Bond & Mortgage Co. v. Keahey, 53 Okla. 176, 155 Pac. 57, L. R. A. 1917C, 829. In the first case, while the original deed from Barnett to Smith and wife was void, Barnett afterward, after reaching his majority, executed a good and sufficient deed to Gooch, the purchaser from Smith, who thereafter conveyed the land to defendant Jones. In this way Gooch acquired and conveyed to Jones a good and sufficient title, and it was held that the latter could not attack the validity of the mortgage given by Smith and wife to Perkins. In the Midland Savings & Loan Company Case it was held that one who purchases real property expressly subject to a mortgage thereon is, in an action to foreclose the mortgage, precluded from asserting the invalidity of such mortgage and defending against it on the ground that it is not fully

enforceable against his grantor. In that case it was admitted plaintiff was entitled to recover the principal debt with a minimum rate of interest thereon. In the United States Bond & Mortgage Co. Case it was held, where one purchases land subject to a mortgage, the land conveyed is effectually charged with the incumbrance to the same effect as if the purchaser had expressly assumed the payment of the debt, or had himself made a mortgage on the land to secure it, and under such circumstances the purchaser would not be permitted to question the validity of the mortgage on the grounds that it was void as to his grantor. In the latter two cases the mortgagor had and conveyed a good title to the premises, subject only to the outstanding mortgage, and the defense interposed involved the right of the purchaser, though acquiring a good title, to defeat, either in whole or in part, a recovery and foreclosure by the mortgagee. Such is not the case here, tor, according to the answer of Chism the averments of which the demurrer admit, there was a total failure of consideration, and a former adjudication, canceling both the mortgage and the deed from Cummings and wife to him, whereby he had "suffered a recovery of the premises by the rightful owners." A purchaser of mortgaged premises, who undertakes by the terms of his conveyance to pay an outstanding mortgage thereon, is not, under all circumstances, bound to do so. He may not, while in possession, or where there is no eviction, actual or constructive, defend on the ground of a failure of consideration, nor has he a complete defense where the failure of consideration is but partial. Where, however, a mortgagor of land undertakes to convey a good and sufficient title, subject to the mortgage, and there is a total failure of such title, the purchaser may plead a failure of consideration, and defend against a recovery on the note in an action by the mortgagee in the covenant of assumption. The general rule in such cases, as stated in Jones on Mortgages, par. 754, is:

"So long as the grantee remains in peaceful and quiet possession of the premises or until he surrenders possession of the same to the paramount title, the mortgagor, or the purchaser who assumes the payment of the mortgage, has no defense to the same. * * * Where, however, the purchaser has been evicted, so that there is a total failure of consideration for the covenant of assumption, the purchaser may effectually allege such eviction and failure in defense of his covenant of assumption."

The promise on the part of Chism to pay

the mortgagee the note was in consideration of the land, and, the title thereto having failed, his promise was a mere n idum pac tum. Rice v. Goddard, 14 Pick. (Mass.) 293. Dunning v. Leavitt, 85 N. Y. 30, 39 Am. Rep. 617, is a case very much in point. There the assumption in the deed to Fuller from Mrs. Leavitt was a covenant on her part to pay the mortgage as part of the purchase price of the land. Her grantor in his conveyance from the mortgagors had bound himself by a similar covenant. If the covenant by Mrs. Leavitt to pay the mortgage was still binding upon her, no doubt could be entertained of the right of the plaintiff to enforce it for their security and 'to a judgment over against her for any deficiency which might arise in the sale 'of the mortgaged premises. But it was held that the consideration for her covenant wholly failed upon her eviction from the premises under a paramount title. The grantors of Fuller had no title or estate in the land when they executed the mortgage or when they conveyed to him, nor did Fuller have any when he conveyed to the defendant. The legal title was in the Howell heirs, and the defendant in 1858 was evicted under judgment founded on their title. It was said the substantial consideration for the defendant's assump_ tion of the mortgage was a conveyance of a title by Fuller, who had covenanted to convey a good title; and that the supposed acquisition of such title by his covenant was the real consideration of her covenant. The opinion cites and reviews: Tallmadge v. Wallis, 25 Wend. (N. Y.) 117; Knapp v. Lee, 3 Pick. (Mass.) 452; Trask v. Vinson, 20 Pick. (Mass.) 105. Other authorities supporting the rule announced are: Frisbee v. Hoffsagle, 11 Johns. (N. Y.) 50; Whitney v. Lewis, 21 Wend. (N. Y.) 131; Parkinson v. Sherman, 74 N. Y. 88, 30 Am. Rep. 268; Gifford v. Benefit Society, 104 N. Y. 139, 10 N. E. 39; Rawle, Cov. of Tit. pars. 134, 137. In Boyd v. Winte, 65 Okla. 141, 164 Pac. 781, it was held that where the facts and circumstances surrounding the conveyance were such that a resulting trust was thereby created, and the grantee took no beneficial 'interest in the real estate conveyed, such conveyance was not a sufficient consideration to support the agreement to assume the payment of such mortgage indebtedness.

It is next contended that as there was no personal service of summons on the Mortgage & Debenture Company, Limited, in the original suit, but only service by publication, that suit being, as contended, in personam, the decree of September 27, 1910, as against the mortgage company is a nullity; and, furthermore, that even though service by publication in such a case may legally be had, the publication made, not meeting the requirements of section 4725, Revised Laws, was not such as to give the court jurisdiction of the mortgage company, and consequently the decree was for that reason void. The suit was begun and concluded prior to the passage of the act of January 25, 1911 (Session Laws 1911, p. 250) providing that an action to quiet title may be joined with an action to recover possession of real property by one not in possession thereof. Section 4671, Revised Laws, respecting the venue of actions, provides that the following cases must be brought in the county in which the subject of the action is situated: First, for the recovery of real property or any interest, or of any estate or interest therein, or the determination in any form of any such right r interest; second, for the partition of real property; third, for the sale of real property under a mortgage, lien, or other incumbrance or charge; fourth, to quiet title, to establish a trust in, remove a cloud on, set aside a conveyance of, or to enforce or set aside an agreement to convey real property.

Section 4722 authorizes service by publication in the following, among other cases: In actions brought under section 4671, where any or all of the defendants reside out of the state, or where it is stated in the affidavit for service by publication that the plaintiff by due diligence is unable to make service of summons upon such defendant or defendants within the state; and in actions which relate to, or the subject of which is, real or personal property in this state, where any defendant has or claims a lien or interest, actual or contingent, therein, or the relief demanded consists wholly or partly in excluding him from any interest therein, and such defendant is a nonresident of the state, or a foreign corporation. Section 4723 requires that before service by publication can be made, an affidavit must be filed, stating that the plaintiff with due diligence is unable to make service of the summons upon the defendant or defendants to be served by publication; and showing that the case is one of those mentioned in section 4722. When such affidavit is filed, the party may proceed to make service by publication. Section 4728 provides for the opening of judgment after default, on service by publication, provided that where service by publication alone is had, the party against whom a judgment or

order has been rendered may, at any time within three years after the date of the judgment or order, have the same opened and be let in to defend. By section 5129 it is provided that when a judgment shall be rendered for a conveyance, release, or acquittance in any court of the state, and the party against whom the judgment shall be rendered does not comply therewith by the time appointed, such judgment shall have the same operation and effect, and be as available, as if the conveyance, release or acquittance had been executed conformably to such judgment; or the court may order such conveyance, release or acquittance to be executed in the first instance by the sheriff; and such conveyance, release, or acquittance, so executed, shall have the same effect as if executed by the party against whom the judgment was rendered.

The question of the power of the Legislature to enact laws providing for service by publication on nonresidents of the state in cases such as the one under consideration has been the subject of repeated decisions in both the state and federal courts. It may be affirmed that the general, if not the uniform, ruling of state courts has been in favor of the power of the state to thus quiet the title to real estate within its limits. In Continental Gin Co. v. Arnold, 66 Okla. 132, 167 Pac. 613, L. R. A. 1918B, 511, in an opinion prepared by Commissioner Mathews, it was held that an action to cancel a real estate mortgage of record was a proceeding in rem in which service by publication against a nonresident of the state, was authorized by section 4722, Revised Laws. Among the cases of other courts sustaining this right are the following: Gillespie v. Thomas, 23 Kan. 138; Walkenhorst v. Lewis, 24 Kan. 421; Rowe v. Palmer, 29 Kan. 337; Beebe v. Doster, 36 Kan. 666, 14 Pac. 150; Venable v. Dutch, 37 Kan. 515, 15 Pac. 520, 1 Am. St. Rep. 260; Dillon v. Heller, 39 Kan. 599, 18 Pac. 693; Scudder v. Sargent, 15 Neb. 102, 17 N. W. 369; Keene v. Sallenbach, 15 Neb. 260, 18 N. W. 75; Cloyd v. Trotter, 118 Ill. 391, 9 N. E. 507; Adams v. Cowles, 95 Mo. 501, 8 S. W. 711, 6 Am. St. Rep. 74; Wunstel v. Landrey, 39 La. Ann. 312, 1 South. 893; Essig v. Lower, 120 Ind. 239, 21 N. E. 1090. As plaintiff in error cites only federal cases in support of her contention, we shall confine ourselves to a review of decisions of United States courts, chiefly the United States Supreme Court, in which like or similar cases were considered, or in which governing principles of law are announced. In Boswell's Lessee v. Otis, 9 How. 336, 13 L. Ed. 164,

was presented a case of a bill for a specific performance and an accounting and in which was a decree for specific performance and accounting, and an adjudication that the amount due on such accounting should operate as a judgment at law. Service was had by publication; the defendants being nonresidents. The validity of a sale under such judgment being questioned the court held that portion of the decree, and the sale made under it void, but with reference to jurisdiction in a case for specific performance alone said:

"Jurisdiction is acquired in one of two modes: First, as against the person of the defendant, by the service of process; or secondly, by a procedure against the property of the defendant, within the jurisdiction of the court. In the latter case the defendant is not personally bound by the judgment, beyond the property in question. And it is immaterial whether the proceeding against the property be by an attachment or bill in chancery. It must be, substantially, a proceeding in rem. A bill for the specific execution of a contract to convey real estate is not strictly a proceeding in rem in ordinary cases, but where such a procedure is authorized by statute, on publication, without personal service of process, it is, substantially, of that character."

In Parker v. Overman, 18 How. 137, 15 L. Ed. 318, the question presented arose under an Arkansas statute, a statute authorizing service by publication. The action was a proceeding under the statute prescribing a special remedy for the confirmation of sales of land by a sheriff on other public officer. Its object was to quiet title. The purchaser at such sale was authorized to institute proceedings by a public notice in some newspaper, describing the land, stating the authority under which it was sold, and "calling on all persons who can set up any right to the land so purchased, in consequence of any informality, or any irregularity, or any illegality connected wth the sale, to show cause why the sale so made should not be confirmed."

After calling attention to the fact that the act was intended to remedy an existing evil, and that it was in substance a bill of peace, it was observed that:

"The jurisdiction of the court over the controversy is founded on the presence of the property; and, like a proceeding in rem, it becomes conclusive against the absent claimant, as well as the present contestant."

In Clark v. Smith, 13 Pet. 203, 10 L. Ed. 127, involving a law of the state of Kentucky, the court said:

A state "has the undoubted power to reg-

ulate and protect individual rights to her soil, and declare what shall form a cloud over titles; and, having so declared, the courts of the United States, by removing such clouds, are only applying an old practice to a new equity created by the Legislature. having its origin in the peculiar condition of the country."

In that case the proceeding, though special in its form, was in its nature but the application of a well-known chancery remedy—one that acts upon the land. and that may be conclusive as to the title of a citizen of another state. In the leading case of Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, cited by plaintiff in error, in which the question of jurisdiction in cases of service by publication was fully considered, the court thus stated the law:

"Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the state, or of some interest therein, by enforcing a contract or a lien respecting the same, or to partition it among different owners, or, when the public is a party, to condemn and appropriate it for a public purpose. In other words, such service may answer in all actions, which are substantially proceedings in rem."

It is true that, in a strict sense. a proceeding in rem, is one taken directly against property, and has for its object the disposition of the property, without reference to the title of individual claimants, but, in a larger and more general sense, the terms are applied to actions between parties where the direct object is to reach and dispose of property owned by them. or of some interest therein. In Huling v. Kaw Valley R. & Imp. Co., 130 U. S. 559, 9 Sup. Ct. 603, 32 L. Ed. 1045, it was held that in proceedings commenced under a statute for the condemnation of land for railroad purposes, notice by publication was sufficient notice to a nonresident owner. The decision in Arndt v. Griggs, 134 U. S. 316. 10 Sup. Ct. 557, 33 L. Ed. 918, is seemingly conclusive of the contention of the plaintiff in error. The case arose in the Circuit Court of the United States for the District of Nebraska. The statutes of that state are set out in the body of the opinion, and are very much like the statutes of this state, to which we have heretofore called attention. The action was in ejectment and to quiet title, and the question presented was whether the decree in another action in a proceeding to quiet title, rendered in accordance with the provisions of the Nebraska statutes, on service duly authorized by them, was valid and operated to quiet title in the

plaintiff therein; or, as stated by the court:

"Has a state the power to provide by statute that the title to real estate within its limits shall be settled and determined by a suit in which the defendant, being a nonresident, is brought into court only by publication?"

The principal question there considered and determined was whether or not the decree in favor of Gray, rendered upon constructive service, was valid until set aside. No objection was made to the service, or any proceeding connected with it. The real estate in controversy was within the jurisdiction of the district court, and that court had authority, in a proper case, to render the decree confirming the title of Gray. The opinion is an able one and was delivered by that eminent jurist, Mr. Justice Brewer. It was urged upon the court that an action to quiet title was a suit in equity, that equity acts upon the person, and that the person is not brought into court by service by publication alone. Of this proposition the court said:

"While these propositions are doubtless correct as statements of the general rules respecting bills to quiet title, and proceedings in courts of equity. they are not applicable or controlling here. The question is not what a court of equity, by virtue of its general powers and in the absence of a statute, might do, but it is, What jurisdiction has a state over titles to real estate within its limits, and what jurisdiction may it give by statute to its courts, to determine the validity and extent of the claims of nonresidents to such real estate? If a state has no power to bring a nonresident into its courts for any purposes by publication, it is important to perfect the titles of real estate within its limits held by its own citizens; and a cloud cast upon such title by a claim of a nonresident will remain for all time a cloud, unless such nonresident shall voluntarily come into its courts for the purpose of having it adjudicated. But no such imperfections attend the sovereignty of the state. It has control over property within its limits; and the condition of ownershp of real estate therein. whether the owner be stranger or citizen, is subjection to its rules concerning the holding, the transfer, liability to obligations, private or public and the modes of establishing titles thereto. It cannot bring the person of a nonresident within its limits—its process does not out beyond its borders—but it may determine the extent of the title to real estate within its limits, and for the purpose of such determination may provide any reasonable methods of imparting notice. The well-being of every community requires that the title of real estate therein shall be secure, and that there be convenient and cer-

tain methods of determining any unsettled questions respecting it. The duty of accomplishing this is local in its nature; it is not a matter of national concern or vested in the general government; it remains with the state; and as this duty is one of the state, the manner of discharging it must be determined by the state, and no proceeding which it provides can be declared invalid, unless in conflict with some special inhibitions of the Constitution, or against natural justice. So it has been held repeatedly that the proceeding established by the state in this respect, is binding upon the federal courts."

The contention was made that no valid decree could be rendered on service by publication only, on the authority of Hart v. Sansom, 110 U. S. 151, 3 Sup. Ct. 586. 28 L. Ed. 101 (cited and relied on by plaintiff in error). After a careful consideration of the facts in the Hart Case, it was said that the decision was not inconsistent with the rule announced by the court, and that the power of the state, by appropriate legislation to give effect to a decree quieting title, was there distinctly recognized. Furthermore, it was said there was presented in the Hart Case no statute of the state of Texas providing directly for quieting the title of land in the state, as against nonresidents, brought in only by service by publication, such as was found to be the case under the Nebraska laws. Referring further to the opinion in the Hart Case, the court stated that:

"It was not the intention of the court to overthrow that series of earlier authorities heretofore referred to, which affirm the power of the state, by suitable statutory proceedings, to determine the titles to real estate within its limits, as against a nonresident, notified only by publication."

In Roller v. Holly, 176 U. S. 398, 20 Sup. Ct. 410, 44 L. Ed. 520, also cited in the brief of plaintiff in error, it was held that personal service on nonresidents outside of the jurisdiction of the court was sufficient to constitute due process of law in a suit for foreclosure of a lien on land within the state of Texas. There is nothing in the opinion that evinces a purpose to depart from, but rather to adhere to, the rule announced in Arndt v. Griggs. The doctrine of the Arndt Case was recognized and applied in Lynch v. Murphy, 161 U. S. 247, 16 Sup. Ct. 523. 40 L. Ed. 688, and Hamilton v. Brown, 161 U. S. 256, 16 Sup. Ct. 585, 40 L. Ed. 691. Also in Leigh v. Green, 193 U. S. 79 (24 Sup. Ct. 390, 48 L. Ed. 623), it is said in the syllabus that:

"Due process of law is not denied the hold-er of a lien on real property by the lack of any provision for personal service on him of notice of the pendency of proceedings in rem to enforce the lien acquired by a purchaser of the property at a tax sale, which are authorized by the Nebraska statutes, where notice is given by publication to all persons interested in the property to appear and set up their claims."

In American Land Co. v. Zeiss, 219 U. S. 47, 31 Sup. Ct. 200, 55 L. Ed. 82, the principle announced in the Arndt Case was applied to a case arising under an act of the Legislature of California, providing for the restoration of record titles to land in the city of San Francisco, caused by the great calamity of earthquake and fire which befell that city in April, 1906, and which statute authorized constructive service by publication against nonresidents and unknown heirs. Of the opinion in the Arndt Case it was said by the court:

"It was there held that, even as to ordinary controversies respecting title to land arising between rival claimants, the state possessed the power to provide for the adjudication of titles to real estate, not only as against residents, but as against nonresidents, who might be brought into court by publication."

The doctrine of the foregoing cases was again recognized and followed in Grannis v. Ordean, 234 U. S. 385, 34 Sup. Ct. 779, 58 L. Ed. 1363. The court, in recognizing that the fundamental requisite of due process of law was the opportunity to be heard, announced that to that end it was necessary that summons or an equivalent notice be employed. Of the power of the states in cases involving title to lands situate therein, it was said:

"But the inherent authority of the states over the titles to lands within their respective borders carries with it, of necessity, the jurisdiction to determine rights and interests claimed by persons resident beyond the territorial limits of the state, and upon whom the ordinary judicial process cannot be served. The logical result is that a state, through its courts, may proceed to judgment respecting the ownership of lands within its limits, upon constructive notice to the parties concerned who reside beyond the reach of process."

In Meyer v. Kuhn, 65 Fed. 705, 13 C C. A. 298, in an opinion delivered at circuit by Chief Justice Fuller, following the rule announced in the Arndt Case, the following language was used:

"Proceedings in partition or to quiet title are not strictly proceedings in rem, for they are not taken directly against property, but

they are regarded, so far as they affect property, as proceedings in rem sub modo, in respect of which, while there must be reasonable notice to the parties; personal service is not essential to jurisdiction, and constructive service may be substituted."

In Weber v. Grand Lodge of Kentucky, 169 Fed. 522, 95 C. C. A. 20, and Connor v. Tenn. Central Ry. Co., 109 Fed. 931, 48 C. C. A. 730, 54 L. R. A. 687, the opinions are by Circuit Judge Lurton, afterward a Justice of the Supreme Court of the United States, and in which the rule announced in the Arndt Case was expressly recognized and applied. To the same effect is Ormsby v. Ottman, 85 Fed. 492, 29 C. C. A. 295, opinion by Judge Sanborn, and where, respecting the Arndt Case, that efficient jurist said:

"The exhaustive and convincing study of the proposition, and the critical review of the authorities in * * * the Supreme Court, delivered by Justice Brewer in Arndt v. Griggs, 134 U. S. 316, 10 Sup. Ct. 557 [33 L. Ed. 918], has put this question at rest in this country, and left nothing further to be said upon it."

Continuing the court said:

"Since that decision was rendered the only question presented by the decree of the class under consideration is: Did the state, by its legislation, confer the power upon the court to render its decree against those who were brought into it by publication only?"

The pleadings in the original suit brought by Lita Billy are not before us, and we can only determine the nature of the action by the decree. That decree adjudges that the title and possession of Lita Billy and Benjamin Finley is "forever settled and quieted." and excludes al others from any interest therein. Assuming, as we must, that the decree rendered is responsive to the allegations of the petition the suit was one primarily to quiet title. The court having acquired jurisdiction to quiet title and possession in the rightful owners of the land, the decree rendered therein, made upon a valid publication notice, is not affected by the order restraining the defendants, even were we to hold that such portion of the decree is in personam and therefore ineffectual.

The contention that the service by publication was insufficient, and that the judgment rendered in pursuance thereof is on that account void, and subject to collateral attack, is deserving of little consideration. The decree of September 27, 1910, recites:

"And it appearing to the court that each of the defendants (other than W. P. Chism) has been duly notified more than 20 days

prior to this date of the pendency of this action, as required by law, by publication and notice thereof for three weeks in Coal county, Okla."

Section 4725 requires that the publication must be made three consecutive weeks in some newspaper, printed in the county where the petition is filed, if there be any printed in such county, and shall state the court in which the petition is filed, the names of the parties, and must notify the defendants thus to be served that he or they have been sued, and must answer the petition filed by the plaintiff on or before a time to be stated, which shall not be less than 41 days from the date of the first publication, or the petition will be taken as true, and judgment, the nature of which shall be stated, will be rendered accordingly. If defendants were "duly notified" for more than 20 days by publication for three weeks of the notice, they were given not less than 41 days to answer, which is all the statute requires. This, the decree sufficiently recites, was done. But were we to conclude otherwise, and by a strained construction of the words employed say that the decree was rendered before the expiration of the 41 days from the date of the first publication, it would not serve to render the decree void, though erroneous and subject to reversal on appeal, or to be set aside on motion.

The attack being made in a collateral proceeding, though the notice was not complete, or although irregular or defective, will not have the effect of rendering the decree a nullity. Rice v. Wooley, 38 Okla. 199, 132 Pac. 817; Edwards v. Smith et al., 42 Okla. 544, 142 Pac. 302; Essig v. Lower, 120 Ind. 239, 21 N. E. 1090; Dutton v. Hobson, 7 Kan. 197; Darrah v. Watson, 36 Iowa, 116; Christian v. O'Neal et al., 46 Miss. 669; Cole v. Butler, 43 Me. 401; Hendrick v. Whittemore, 105 Mass. 23. The rule is applicable to cases wherein judgments and decrees are rendered where the notice is by publication as well as in cases of personal service. Indeed, it has been said that good reason exists for being more liberal in cases of constructive notice than in those where the service is personal, for the defendants in the former class of cases are entitled, as of right, to open the judgment. Quarl v. Abbett, 102 Ind. 233, 1 N. E. 476, 52 Am. Rep. 662. Section 4728, Revised Laws, permits the opening of a judgment after default on service by publication, at any time within three years after the date of the judgment, upon compliance with the requirement of the stat-

ute, subject to certain limitation affecting the right of a purchaser in good faith.

The judgment of the trial court is affirmed. .

All the Justices concur.